RULING ON MOTION TO REMAND
 

 JOHN V. PARKER, Chief Judge.
 

 This matter is before the court on a motion by plaintiffs to remand. Defendant has filed an opposition. At the request of the court, the parties have filed supplemental briefs
 
 [1]
 
 . Removal jurisdiction is allegedly based upon diversity of citizenship.
 

 On April 4, 1996, plaintiffs, James Kevin Kimball and Kevin Gale Haught, filed this action in the 18th Judicial District Court for the Parish of Pointe Coupee, Louisiana. Made defendants are Modern Woodmen of America (‘Woodmen”) and John F. Burleigh. Plaintiffs bring this action individually and as proposed representatives of a class of “[a]ll persons who purchased universal life policies from defendant, Modern Woodmen, who are residents of the United States of America and who have incurred damages, individually, under $50,000”.
 
 [2]
 
 According to the petition,
 
 *481
 
 there are “hundreds and possibly thousands of members of the class”.
 

 Plaintiffs allege that Woodmen “began developing new products for sale to the public” in the 1980’s. Woodmen allegedly “knew at the time of the development of these products that it was unlikely, if not impossible, that the life insurance policies would ever perform at the level at which they were represented.” Kimball allegedly purchased a life insurance policy from Woodmen, through its agent, John Burleigh.
 

 When the policy was purchased, “defendants” falsely represented that “the premium would vanish at a certain point in time because it would be covered by company dividends and/or interest earned on the policy’s cash value”. “Defendants” also falsely represented that the policy would “serve as a savings account, retirement plan, or investment”. Plaintiffs allege that they “believe putative class members are being forced to pay additional premiums to maintain coverage or face a cancellation of their policy or reduction in coverage”. Plaintiffs “believe that this fraudulent conduct by Modern Woodmen was systematic and continuous and affected many Modern Woodmen policyholders over time”.
 

 Plaintiffs seek to recover damages on the basis that Woodmen “and its agents” used “unfair, deceptive, and misleading” practices and breached duties of “good faith and fair dealing” in issuing the life insurance policies. The petition alleges that “defendants” made negligent misrepresentations and omissions “by overstating the dividends and benefits to be realized for the premiums paid”, knowing that the representations were false or making them with reckless disregard for the truth.
 

 The damages allegedly sustained by plaintiffs and the putative class members include “return of premiums where appropriate, return of any benefits or dividends that should have been realized, return of profits improperly made by the defendants” and “compensatory damages resulting from the defendants’ actions”. The petition farther requests two times the actual damages awarded, attorney’s fees and an additional sum for the named plaintiffs for their duties as class representatives.
 

 On May 10, 1996, defendant Woodmen removed on the basis of diversity of citizenship jurisdiction. Plaintiffs Kimball and Haught are alleged to be citizens of Louisiana and Ohio, respectively. Defendant Woodmen is allegedly an Illinois corporation with its principal place of business there. According to the removal petition, Burleigh, a citizen of Louisiana, was allegedly joined as a defendant to defeat diversity jurisdiction. In the notice of removal, Woodmen asserts that plaintiffs have no independent cause of action against Burleigh and the class action may be “fully determined” without his presence and it would not therefore be inequitable or unfair to proceed without him.
 

 I. Fraudulent Joinder of Insurance Agent
 

 The first issue raised by the motion to remand is whether John Burleigh, the insurance agent, was fraudulently joined in order to defeat removal jurisdiction. Plaintiffs contend that Burleigh is personally liable to Kimball
 
 [3]
 
 for breaches of “independent, personal duties”. In opposition, defendant argues that plaintiffs fail to make any specific factual allegations against Burleigh to support a claim against him. Woodmen additionally contends that plaintiffs lack evidence to support a claim against Burleigh. Alternatively, Woodmen argues that Burleigh’s joinder was “fraudulent” because he only sold nine policies that remain in force and the number of potential claims based upon policies sold by Burleigh “are infinitesimal in relation to the overall putative class”
 
 [4]
 
 .
 

 To establish “fraudulent joinder”, the removing defendant must show that there is no possibility that the plaintiff could establish a cause of action against the non-diverse defendant in state court.
 
 B., Inc. v. Miller Brewing Co.,
 
 663 F.2d 545, 549 (5th Cir.1981). The court must evaluate all of the factual allegations of the state court petition in the light most favorable to the plaintiff.
 
 *482
 
 Id. The court may “pierce” the pleadings and consider summary judgment-type evidence but all disputed questions of fact and all ambiguities in the controlling state law must be resolved in favor of the plaintiff.
 
 Burden v. General Dynamics Corp.,
 
 60 F.3d 213 (5th Cir.1995).
 

 Plaintiffs rely on the allegations of the petition made generally against “defendants” or against Woodmen “and its agents”. Plaintiffs have also submitted Kimball’s affidavit, which establishes the following: Burleigh informed Kimball that the policy “would be a good savings and retirement investment”; Burleigh told Kimball that he would never have to pay more than $309.00 a year to sustain the $50,000 face value of the policy and; that “at some point” he would no longer have to pay premiums to maintain the policy.
 

 The claims for unfair, deceptive business practices are necessarily directed toward the corporation. Plaintiffs contend, however, that both the company and Burleigh are liable for fraudulent or negligent misrepresentations. Plaintiffs contend that they have alleged that Burleigh made the misrepresentations knowing them to be false or with reckless disregard for the truth and that this is sufficient to state a tort action against him personally.
 

 The court has previously pointed out that a federal court motion to remand is unlike a Louisiana exception of no cause of action.
 
 Mitchell v. Exxon Corp.,
 
 860 F.Supp. 332, 335 (M.D.La.1994). Plaintiffs may not rely upon generalized, conelusory allegations of fraud (or gross negligence or intentional tort) on a motion to remand because the pivotal question is whether plaintiffs have a possibility of recovering on the merits against the local defendant in state court, not whether they might survive an exception of no cause of action in state court. Id. This is a distinction often overlooked by counsel on both sides.
 

 In their petition, plaintiffs essentially allege that Burleigh was acting in accordance with the long standing marketing practices of the company.
 
 [5]
 
 There are no allegations that he went outside his authority, or that he misrepresented the company’s position on anything, or that he omitted to pass along information from the company. While Burleigh personally delivered the representations, he did so as an agent for the company; he did not personally guarantee that the premiums would “vanish”. Thus, it is clear that he cannot be personally responsible as a matter of contract. See, La.Civ.Code arts. 3012, 3013.
 

 Plaintiffs contend that Burleigh is liable in tort for misrepresentations he personally made to Kimball. While the law in this area is somewhat confusing,
 
 [6]
 
 on a motion to remand, the court must resolve all ambiguities in the law in favor of the plaintiffs. However, plaintiffs recognize that at a minimum they must establish that Burleigh acted with knowledge (or reckless disregard) of the falsity of the company’s misrepresentations. Yet, there are no factual allegations in the petition (or attestations by Kimball in his affidavit) to support the contention that Burleigh knew the statements to be false or that he acted with reckless disregard of the truth.
 

 On the other hand, defendant has established by affidavit that Burleigh was employed as an agent for Woodmen approximately seven months, from December 1, 1992, through July 9, 1993. It is further established that Burleigh was the writing agent on twenty two contracts, only nine of which remain in force at present. At the time that Kimball’s policy was written on February 18, 1993, Burleigh had been writ
 
 *483
 
 ing policies for Woodmen a little over two months. The premiums on the policy issued to Kimball have not increased and his coverage has not decreased.
 

 Plaintiffs have failed to allege any facts or to present any evidence indicating that Burleigh had any knowledge of the falsity of the company’s representations or that he acted in reckless disregard of the truth of the representations.
 
 [7]
 
 The conclusory declarations in the petition and affidavit are not facts and they are not sufficient to create a disputed issue of fact.
 

 Based upon the foregoing, the court finds that plaintiffs have no possibility of recovering against Burleigh personally in state court. Consequently, the court finds that Burleigh was fraudulently joined and that his presence may be ignored.
 

 II. Jurisdictional Amount
 

 Plaintiffs seek “appropriate monetary damages ... including return of premiums where appropriate, return of any benefits or dividends that should have been realized, return of profits improperly made by the defendants, compensatory damages resulting from the defendants’ actions”. With their supplemental memorandum, plaintiffs submit an affidavit purportedly establishing that the total amount of these claims will not exceed $25,000 per plaintiff. Plaintiffs also indicate that they seek an additional $2,000.00 each for additional responsibilities and burdens as representatives of the class.
 

 Accepting those representations as the best indication of the amount in controversy, the court agrees with defendants that the request for attorney’s fees causes the amount in controversy to exceed $50,000. Both sides agree that attorney’s fees may be awarded in a class action under La.Code Civ.P. art. 595.
 
 [8]
 
 Additionally, there is no question that attorney’s fees awarded in a class action are attributed to the class representatives.
 
 In re Abbott Laboratories,
 
 51 F.3d 524 (5th Cir. 1995).
 

 Accordingly, the motion by plaintiffs to remand is hereby DENIED.
 

 [1]
 

 . The court is compelled to comment that neither side adequately addressed the issues upon which the court requested comment. The court concludes, however, that the record is sufficient (barely) to provide a basis for ruling on the motion to remand.
 

 [2]
 

 . Certain individuals are excluded from the class, as alleged in the petition.
 

 [3]
 

 . It is undisputed that Haught did not purchase a policy from Burleigh.
 

 [4]
 

 . The court does not reach this issue.
 

 [5]
 

 . Assuming for purposes of this motion that a Louisiana court might find personal liability of a disclosed agent who added his own gloss of false representations beyond that which his employer provided, it is clear that no such claim is made here. Burleigh transmitted to plaintiffs information ("sales pitch”) provided to him by the company.
 

 [6]
 

 . See, Morris, Business Associations, 50 La. Law Rev. 211 (1989), discussing cases imposing tort duties on disclosed agents without properly considering the distinctions between contractual duties and tort duties. See, e.g.,
 
 Fryar v. Westside. Habilitation Center,
 
 479 So.2d 883 (La. 1985);
 
 McCollum v. Harbor View Townhouses, Inc.,
 
 428 So.2d 846 (La.App. 5th Cir.1983). Traditionally, tort law has not protected financial interests of a contracting party in the proper performance of the contract. 50 La.Law Rev. at p. 225.
 

 [7]
 

 . See Note 5, supra.
 

 [8]
 

 . The comments to article 595 indicate that awards for attorney's fees have been allowed in class actions under "general equity jurisprudence” and in accordance with long standing Louisiana policy.