**LIVINGSTON DOWNS RACING ASSOCIATION, INC.**

v.

**JEFFERSON DOWNS CORPORATION, et al.**

**United National Insurance Corporation, et al.**

v.

**Jefferson Downs Corporation, et al.**

Nos. CIV.A.96–3430–E–M1, CIV.A.97–18–E–M1.

United States District Court, M.D. Louisiana.

Sept. 23, 2002.

Jude C. Bursavich, Francis S. "Frank" Craig, III, Victor A. Sachse, III, Claude F. Reynaud, Jr., Jeanne C. Comeaux, Breazeale, Sachse & Wilson, Baton Rouge, LA,

Provino C. Mosca, Mosca & Mosca, New Orleans, LA, Darlene Sansone Ransome, Baton Rouge, LA, J. Marvin Montgomery, Baton Rouge, LA, David T. Ralston, Jr., Steven C. Lambert, Roderick B. Williams, Ransome Law Firm, Baton Rouge, LA, for Plaintiff.

Vance A. Gibbs, Charles S. McCowan, Jr., Bradley Charles Myers, Shannan Sweeney Rieger, J. Carter Wilkinson, Troy J. Charpentier, James P. Dore, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, Baton Rouge, LA, for Defendant.

## *RULING & ORDER*

BRADY, District Judge.

This matter is before the Court on a Motion to Reconsider portions of its summary judgment ruling of August 13, 2001 (doc. 557) filed by defendants Fair Grounds Corporation, Jefferson Downs Corporation, Finish Line Management Corporation, Bryan Krantz, Marie Krantz, the Committee to Control Gambling, Inc., Peter Henry, and George Boudreaux. (Doc. 573.) The Fair Grounds defendants ("Fair Grounds")[1] wish the Court to reconsider four aspects of that ruling. First, Fair Grounds urges that the Court erred in finding that Plaintiff has standing to sue under RICO because the ruling did not mention the recent Supreme Court decision *Beck v. Prupis*.[2] Second, Fair Grounds argues that while the Court correctly ruled that Plaintiff lacked standing on most of its RICO claims because it failed to present enough evidence to support a reasonable inference that Fair Grounds' actions · had proximately caused Plaintiff's lost profit injuries, it erred in

failing to come to the same conclusion—by applying the same proximate cause analysis—with respect to Plaintiff's antitrust claims. Third, Fair Grounds requests that the Court revisit its summary judgment decision that there is a genuine question of material fact whether Fair Grounds had anything to do with Plaintiff's inability to obtain relief from the Racing Commission acting in its adjudicatory capacity. Fourth, Fair Grounds seeks reconsideration of the Court's ruling that the Fair Grounds litigation constituted a pattern of repetitive claims, which places the case outside the control of *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*[3] That ruling relieved Plaintiff of having to show that each claim was objectively baseless—suitable for resolution as a matter of law—before proving that the litigation was part of a policy to interfere with a competitor—suitable for resolution by a fact-finder at trial.

## RECONSIDERATION STANDARD

▆▆ Fair Grounds moved for reconsideration of various issues decided in the Court's ruling of August 13, 2001. Fair Grounds' motion arrived on November 9, 2001. Rule 59(e) of the Federal Rules of Civil Procedure allows a party to move to alter or amend a judgment within ten days of its entry. FED. R. CIV. PRO. 59(e). A motion to reconsider a judgment is treated as a Rule 59(e) motion to alter or amend that judgment. *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350 (5th Cir.1993). Where, as here, the motion to reconsider concerns only interlocutory rulings, the appropriate vehicle for making the motion is the Rule 54(b) grant of discretion to the

---

**1.** Defendants in *Livingston Downs v. Jefferson Downs, et al.* identify themselves collectively as "Fair Grounds" in submissions to the Court. The Court will follow suit in this ruling since this motion does not require distinguishing among the many parties.

**2.** 529 U.S. 494, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000).

**3.** 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993)

district courts. The distinction is important for two reasons. First, unlike Rule 59(e), Rule 54(b) does not contain any kind of time limit. The only limitation on such reconsideration is that if the court issues an order which expressly states that there is no just reason for delay, the order becomes a judgment that is final and appealable. FED. R. CIV. PRO. 54(b); *see also, Zapata Gulf Marine Corp. v. Puerto Rico Maritime Shipping Authority,* 925 F.2d 812, 815 (5th Cir.1991). Second, the applicable standards for granting reconsideration under Rule 54(b) are somewhat looser than those under Rule 59(e).

■■ Rule 54(b) provides that:

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision *is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.*

FED. R. CIV. PRO. 54(b)(emphasis supplied). The plain meaning of the Rule is that a court retains jurisdiction over all the claims in a suit and may alter any earlier decision at its discretion until final judgment has been issued on a claim or on the case as a whole. *See Zapata Gulf Marine,* 925 F.2d at 815. Rule 59(e) does not apply

until such a final judgment has been entered. This reading is confirmed by the fact that Rule 54(a) defines "judgment" as used in the rules to mean "a decree and any order from which an appeal lies." FED. R. CIV. PRO. 54(a). Rule 54(b) refers to an "order or other form of decision, however designated." Only upon explicit statement does such an order become a judgment under Rule 54(b). Rule 59(e) applies only to judgments. The August 13, 2001 ruling resolved only a handful of the liability issues in this complicated case. This Court did not direct entry of judgment or determine that there was no just reason for delay. Consequently, the Memorandum Ruling this Court issued on August 13, 2001 was not a judgment, the Rule 59(e) time limit does not apply to it, and this Court retains discretion to reconsider its earlier rulings in this case.

■ District courts have considerable discretion in deciding whether to grant a motion to reconsider an interlocutory order. The exact standard applicable to the granting of a motion under Rule 54(b) is not clear, though it is typically held to be less exacting than would be a motion under Rule 59(e), which is in turn less exacting than the standards enunciated in Rule 60(b). *See M.K. v. Tenet,* 196 F.Supp.2d 8, 12 (D.D.C.2001); *Persistence Software, Inc. v. Object People, Inc.,* 200 F.R.D. 626, 627 (N.D.Cal.2001). Though less exacting, courts have looked to the kinds of consideration under those rules for guidance. *Bragg v. Robertson,* 183 F.R.D. 494, 496 (S.D.W.Va.1998).

■ District courts have considerable discretion in deciding whether to grant a Rule 59(e) motion as well. *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.,* 6 F.3d 350, 355 (5th Cir.1993). In the past, courts have granted such motions for the following reasons: (1) the judgment is based upon a manifest error of fact or law;

(2) newly discovered or previously unavailable evidence exists; (3) manifest injustice would otherwise result; (4) there has been serious misconduct by counsel; and (5) an intervening change in controlling law alters the appropriate outcome. *See Metairie Bank & Trust Co. v. Payne*, 2000 WL 979980 (E.D.La.); *Campbell v. St. Tammany Parish School Bd.*, 1999 WL 777720 (E.D.La.). Many courts treat these five factors as conditions on a successful Rule 59(e) motion.[4] *See e.g., Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4 th Cir.1993)("While plaintiffs disagreed with how the district court applied the *Christiansburg* standard, mere disagreement does not support a Rule 59(e) motion"); *Lostumbo v. Bethlehem Steel, Inc.*, 8 F.3d 569, 570 (7th Cir.1993)("The district court did not abuse its discretion in determining that the affidavit Lostumbo sought to introduce was available during the pendency of the summary judgment motion, and it therefore properly dismissed Lostumbo's Rule 59 motion"); *F.D.I.C. v. World University Inc.*, 978 F.2d 10, 16 (1st Cir.1992) ("Motions under Rule 59(e) must either clearly establish a manifest error of law or must present newly discovered evidence. They must not be used to argue a new legal theory."). These courts treat reconsideration of a judgment as an extraordinary remedy that is contrary to the ideals of finality and repose which should be used sparingly. *See e.g., Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D.Fla.1994); *Pennsylvania Ins. Guar. Ass'n v. Trabosh*, 812 F.Supp. 522, 524 (E.D.Pa.1992).

■ Courts in the Fifth Circuit, however, are directed to take motions under Rule 59(e) more seriously. Two cases note that Rule 59(e) does not—unlike Rule 60(b)—place any particular limitations upon the possible grounds for relief. *Ford v. Elsbury*, 32 F.3d 931, 937 (5th Cir.1994); *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir. 1990), *cert. denied*, 510 U.S. 859, 114 S.Ct. 171, 126 L.Ed.2d 131 (1993), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir.1994)(*en banc*). The Fifth Circuit concluded that "in order to reopen a case under Rule 59(e) on the basis of evidentiary materials that were not timely submitted, the mover need not first show that her default was the result of mistake, inadvertence, surprise, or excusable neglect or that the evidence is such as to show that the judgment was manifestly wrong." *Lavespere*, 910 F.2d at 174. The facts under this motion are somewhat different since Defendants do not wish to submit any new evidence. Similarly, this motion is brought pursuant to Rule 54(b) rather than Rule 59(e). Nevertheless, the Court notes the Fifth Circuit's general principle that "the district court must strike a proper balance between two competing interests: 'the need to bring litigation to an end and the need to render just decisions.' " *Ford v. Elsbury*, 32 F.3d at 937 (quoting *Lavespere*). It is therefore appropriate for this Court explicitly to balance the interests of finality and fairness in deciding whether to reconsider the issues decided in its August 13, 2001 ruling. Conse-

4. Plaintiff contends in its memorandum opposing reconsideration that reconsideration is "appropriate only if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." Plaintiff's Memo Opposing Reconsideration at 2. Plaintiff cites to a case from the Ninth Circuit Court of Appeals for support. Unfortunately for the argument, the Court in that case treated that motion for reconsideration under Rule 59(e), which is not implicated in this case at this time. Moreover, as will become apparent below, the Fifth Circuit is not amenable to reading such discretion-limiting conditions into Rule 59(e), which contains no conditions in its text.

quently, this Court will consider whether there is any legitimate reason to revisit its earlier determinations and weigh those reasons against the interest of judicial economy, including the interest of winnowing and defining the issues that may eventually be considered at trial.

## ANALYSIS

### I. RICO Standing

The first ground upon which Fair Grounds seeks reconsideration is this Court's decision on the question whether Plaintiff has standing to sue under RICO. In the August 13, 2001 ruling, this Court wrote: "To establish standing under § 1964(c), a plaintiff must show (1) a violation of § 1962, (2) an injury to her business or property, and (3) that her injury was proximately caused by a RICO violation." Memo Ruling at 49. The Court considered each requirement in turn and ruled that there was a question for trial on each element. Importantly, the ruling held that

> [T]he expenses LDRA incurred in fighting the Thomas and Odom suits were a direct and foreseeable consequence of those suits. As LDRA alleges that the Defendants intended to inflict these expenses as part of their conspiracy to exclude LDRA from the market for live horse racing, these injuries satisfy the proximate cause element for RICO standing.

Memo Ruling at 51–52. This statement entails that, for summary judgment purposes, Plaintiff had presented sufficient evidence to go to trial on the question whether it was injured by the acts of filing the legal arguments.

Defendants object that the ruling failed to address the recent Supreme Court decision *Beck v. Prupis.*[5] That case, Defendants assert, adds a fourth element to

RICO standing for civil conspiracy claims, namely, that "the injury in an alleged conspiracy under 18 U.S.C. § 1962(d) must flow from an overt act that is itself an act of racketeering or is otherwise wrongful under RICO." Def. Memo Supporting Mot. to Reconsider at 3.

■■■ An allegation that the Court, in making an earlier ruling, failed to consider relevant law certainly clears whatever threshold showing Rule 54(b) might place on a party moving for reconsideration. If this Court failed to take clearly binding authority into account, as Defendants claim, then failing to take another look at the matter will not only frustrate the interest in the fair treatment of claims, but will also, ultimately, undermine the interest in finality as well. For a failure by this court to follow clearly controlling authority will no doubt result in reversal and remand. The Court now turns to consider the merits of Defendants' appointment of error.

To evaluate whether *Beck* is relevant to this case requires some understanding of Plaintiff's claims. Even stating the Plaintiff's basis for its RICO claim requires some statutory unpacking. Section 1964(c) creates a cause of action for anyone who is injured "by reason of" a violation of § 1962. 18 U.S.C. § 1964(c). Section 1962(d) makes it unlawful to conspire to violate any of the provisions of subsections (a), (b), or (c) of that section. 18 U.S.C. § 1962(d). Section 1962(c)—to take only one of Plaintiff's allegations—makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Section 1961(1) defines "racke-

**5.** 529 U.S. 494, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000).

teering activity" as, *inter alia*, "any act indictable under ... section 1341(relating to mail fraud), [or] section 1343 (relating to wire fraud)." 18 U.S.C. § 1961(1). Section 1961(5) states that there must be at least two acts of racketeering (here, mail or wire fraud) for there to be a "pattern of racketeering activity." 18 U.S.C. § 1961(5). Section 1341 makes it unlawful (as mail fraud) to use the Postal Service or any private interstate carrier "for the purpose of executing" a "scheme or artifice to defraud, or for obtaining property by means of false or fraudulent pretenses [or] representations." [6] 18 U.S.C. § 1341.

It requires even more diligent work to repackage these legal rules into Plaintiff's claim. First, Plaintiff claims that Fair Grounds conceived a "scheme or artifice to defraud." That scheme or artifice, apparently, was the larger plan to tie up Plaintiff and its business plans by initiating a string of baseless lawsuits and other petitioning activities whose goal was delay, not success on the merits. Fair Grounds violated § 1341, Plaintiff claims, by using the wires and mails to carry out that larger plan. So, for example, Plaintiff claims that Fair Grounds sent an initial pleading in a suit brought by Terrence Lee Odom (as a straw-plaintiff) on September 13, 1993 to Joseph R. Martin, Paul H. Benoist, Angie R. LaPlace, Rodney N. Erdey, and the 21st Judicial District Court Clerk. Pltff's Rico Case Stmnt, Exhibit 1. Plaintiff alleges forty separate uses of the wires and mails that are related to the execution of the Odom and Thomas lawsuits alone. Each of these could constitute an independent count of mail or wire fraud if there was an overarching scheme to defraud and

if court filings are not protected from being the basis of a mail fraud charge. Presumably, the assertion is that they used the postal service to effect each of these mailings. So, Plaintiff argues, Fair Grounds repeatedly violated § 1341 and § 1343 by using interstate communications systems to advance their scheme. These violations are included under § 1961(1) as racketeering activities. The multiple instances qualify them as a pattern of racketeering activities under § 1961(5), since forty is greater than two. Fair Grounds, Plaintiff claims, conducted their business in part through this pattern of racketeering activities, since the entire plan sought to advance the Fair Grounds business interests. Consequently, they violated § 1962(c), at least.[7] Finally, Plaintiff alleges a cause of action under § 1964(c) as a party injured by reason of Fair Grounds' § 1962(c) violation. Plaintiff also alleges that Fair Grounds conspired to violate the substantive subsections of § 1962 and consequently violated § 1962(d) as well.

 What *Beck* adds to the analysis is simply this rule: that to have standing as a party injured by a RICO conspiracy, that injury must be caused by an overt act that is an "act of racketeering or otherwise wrongful under RICO." *Beck*, 529. U.S. at 505, 120 S.Ct. 1608. The case does not apply to civil suits based on violations under the substantive § 1962 subsections. Plaintiff alleges such causes of action as well. First Supp. & Amend. Compl. ¶¶ 225, ("violations of 18 U.S.C. § 1962(a) and 1962(d)"), 238 ("participated ... in the conduct of the enterprise, and conspired to do so"), 251 ("conspired to and were asso-

---

**6.** Section 1343 makes it unlawful to transmit "any writings, signs, signals, pictures, or sounds" via "wire, radio, or television communication in interstate or foreign commerce" for the purpose of executing a scheme or artifice to defraud. 18 U.S.C. § 1343.

**7.** Plaintiff also claims that Fair Grounds violated subsections (a) and (b) and conspired to violate all three. The discussion above mentions only the subsection (c) violation purely to simplify the discussion.

ciated with and participated in the enterprise"). Consequently, *Beck* is irrelevant to the claims of substantive violations in this case and the prior ruling did not need to consider that case on those claims.

In any event, even under the conspiracy claims, Plaintiff *does* claim that an overt act of racketeering caused their injuries. Namely, Plaintiff claims that Fair Grounds wrongfully used the mails and wires to carry out their scheme or artifice to defraud. Fair Grounds caused the injury, Plaintiff claims, by *filing the legal documents*. Fair Grounds filed these papers by using the mails and wires. Using the mails and wires to advance a scheme to defraud is an act of racketeering. Since the filings were effected by using the mails, and since this Court held that there is a genuine issue of material fact whether the filings proximately caused Plaintiff to incur legal fees, it follows that one of the alleged predicate acts of mail fraud might have proximately caused those injuries. The result is that, though the *Beck* test is relevant to the conspiracy claims, Plaintiff has RICO standing anyway because its claims meet the test.

■■■ That *Beck* does not preclude Plaintiff's claims is apparent from the difference between the facts of the two cases. In *Beck*, the plaintiff was a former president, CEO, director, and shareholder in Southeastern Insurance Group. *Beck*, 529 U.S. at 497, 120 S.Ct. 1608. The defendants were high level officers and directors of the same organization. *Id.* at 498, 120 S.Ct. 1608. The defendants began to engage in business-related activities that qualified as racketeering. *Id.* When the plaintiff discovered the wrong-doing, he notified regulators. Defendants responded by concocting a fraudulent report on the plaintiff. They used that report as the basis for his termination. *Id.* Beck sued, claiming he was injured by the RICO conspiracy. The Supreme Court held that, though Beck's firing helped defendants to maintain their RICO conspiracy, it did not confer standing because the termination was not itself an act of racketeering. Beck was injured by an independent conspiracy that did not involve racketeering activity. It is not enough to confer Rico standing that an independent conspiracy facilitated the RICO conspiracy. Such is the holding of *Beck*.

Defendants in the present case cannot claim that the injuring act was not an essential part of the RICO conspiracy. In fact, if Plaintiff can sustain its theory of liability, their acts of mailing were overt acts of racketeering. Though they may look more innocent than the acts of the defendants in *Beck*, they are not so for the purposes of the RICO statute,[8] assuming that Plaintiff can prove the underlying scheme to defraud as well as the mailings. As a result, the Defendants' Motion to Reconsider this Court's August 13, 2001 ruling on RICO standing is denied.

## II. Antitrust Claims

### A. Proximate Cause

■■■ Defendants also seek "reconsideration" of this Court's "ruling" that Plaintiff has standing to bring its antitrust claims. In fact, the August 13, 2001 memorandum ruling did not consider whether Plaintiff has antitrust standing. Instead, like Defendants' memorandum in support of summary judgment, it focused exclusively on whether the *Noerr–Pennington* doctrine provided Fair Grounds a complete defense to the antitrust claims. *See* Memo Ruling;

---

**8.** It is a peculiarity of the mail and wire fraud statutes that they make the culpable act an act of communication, rather than the underlying fraud. As far as the statute is concerned, one may engage in any schemes to defraud that one wants. One may even carry them out, so long as one does not use interstate means of communication to do so.

Memo Supp. Def.'s Mot. for Summary Judgment. Fair Grounds now assert that the standards governing the proximate cause element of RICO and antitrust standing are the same. They argue that the Court should reject antitrust standing to bring a claim based on speculative lost profits just as the earlier ruling rejected RICO standing based on the same asserted injuries.

 It is not the job of this court to draw inferences for the parties. Nor is a motion for reconsideration the proper vehicle by which to present new arguments. Under Rule 54(b) this Court has discretion to reconsider its earlier orders and decisions. That does not mean that the Court has *carte blanche* to reconsider newly presented theories of liability or the lack thereof. Nor do the terms "order" or "decision" in Rule 54(b) include the ultimate outcome of the case. There is nothing to stop Fair Grounds—as past experience has clearly demonstrated—from filing a new motion for summary judgment based on this argument. Consequently, they will not be prejudiced by this refusal to consider these arguments now. Moreover, both parties to this action should be concerned not to proliferate their legal filings. One would expect that Defendants would be particularly in tune with this concern since they are charged with filing legal documents without concern for their merits. Alas, no. It is perhaps in vain to suggest that this ruling serves the interests of finality for a case of such volume and duration. Nevertheless, this Court hereby takes one small step for finality by rejecting, on this ground as well, the motion to reconsider.

### B. Racing Commission

 Fair Grounds also requests that the Court reconsider its ruling that Plaintiff has presented sufficient evidence to create a genuine issue of fact whether Fair Grounds used the adjudicatory procedures of the Racing Commission further to delay the successful undertaking of their business enterprise. Though Fair Grounds argued only that these petitioning activities were protected by the *Noerr–Pennington* doctrine and not that absent that protection, there was insufficient evidence of that interference, this Court did—after rejecting immunity—consider the sufficiency of evidence under the summary judgment standard. The ruling states:

> LDRA alleges that the Defendants used their influence with the Commission to delay the hearing on LDRA's application. LDRA also asserts that, when the application was finally heard, the Commission quashed its subpoenas, prohibited it from calling its witnesses, and refused to allow LDRA to present its arguments fully, all at the Defendants' behest. These assertions, if believed, could lead a reasonable factfinder to conclude that the Defendants were using their "power, strategy, and resources ... to harass and deter [LDRA] in its use of administrative proceedings so as to deny [it] free and unlimited access" to the Commission.

Memo Ruling at 34.

Fair Grounds' suggestion is that the Court misapplied the relevant summary judgment standard. It quotes *Anderson v. Liberty Lobby, Inc.* as stating: "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The weight of the objection is carried best by a quotation from the Court's own ruling: "Although this Court considers the evidence in the light most favorable to the non-movant, the non-movant may not merely rely on allegations set forth in the pleadings. Instead, the non-movant must

respond to the motion for summary judgment by designating particular facts indicating that there is a genuine issue for trial." Memo Ruling at 18. Because the law clearly calls for the Court to rely on more than the allegations of the non-moving plaintiff and because the ruling at least adverts solely to the allegations, the Court will reconsider this question.

 In fact, Plaintiff does point to much evidence that could lead a reasonable juror to conclude that Fair Grounds attempted to deprive it of free and unlimited access to the Racing Commission. Fair Grounds admits that they sought the former Jefferson Downs' off-track betting ("OTB") license for Fair Grounds, sought to deny a license to Plaintiff, and that it was represented by individual defendant Larry Bankston. Plaintiff's claim is that Fair Grounds misused the adjudicative process to enable Fair Grounds to get the old Jefferson Downs' OTB license. Al Ransome submitted an affidavit claiming that "I was told in no uncertain terms that I would not get my license until the parlors were transferred to the Krantzes." There is a letter from Bankston to the Commission that claims that the documentation Plaintiff sought to bring out at the hearing was proprietary when, in fact, it was available under the Public Records Act. A reasonable juror could infer interference and misrepresentation from these facts, if she believed them. Plaintiff also submits evidence that Bankston had access to a letter sent by Plaintiff only to the Governor and the Chair of the Commission. There is more. Surely the cited evidence alone meets the summary judgment standard. Having reconsidered this issue, the Court hereby denies as well this aspect of Fair Grounds' Motion to Reconsider.

## C. Pattern of Repetitive Lawsuits

 Finally, Fair Grounds seeks reconsideration of this Court's decision to treat their actions as constituting a pattern of repetitive lawsuits. The import of that decision is that it relieved the Plaintiff of proving for each suit that it was objectively baseless before getting into the much more fact-based question of Fair Grounds' intent in bringing these suits. Fair Grounds now asks the Court to reconsider the basis of that decision, arguing that, though a pattern of repetitive lawsuits may not warrant the presumption of merit that *PRE* affords single suits, theirs was not such a pattern. They point out that they filed only three of those lawsuits, even including the cases involving straw-plaintiffs. They argue that interventions cannot constitute part of such a pattern. Moreover, they urge, all other cases that have distinguished *PRE* have involved a much larger number of lawsuits. The Court considered these arguments in its initial ruling on the matter. Where the Court has made a determination on an arguable point of law, not clearly controlled by any binding precedent, and there is no independent reason for reconsidering the decision other than mere disagreement, it would be wasteful to reconsider the matter. Any position is supportable by boundless arguments, and lawyers are trained and paid to find those arguments. Judicial economy counsels against reconsidering an issue each time someone presents a new argument. In any event, if the matter continues to trouble Fair Grounds after the case has otherwise terminated, it may, of course, appeal the matter at that time. In the meanwhile, this case must proceed with that decision intact. The motion to reconsider on that basis is also denied.

As part of this final basis for reconsideration, Fair Grounds asserts that the Court

made several mistaken findings of fact. First, it complains that the August 13, 2001 ruling indicates that Fair Grounds filed four suits when it filed only three. Second, Fair Grounds objects to "numerous findings on pages 41–43 of the Ruling in support of its conclusion that Fair Grounds 'abused the judicial process.'" Def. Memo Supporting the Motion to Reconsider at 17. Assertions of clear error merit reconsideration. Otherwise, both economy and justice may suffer.

In its earlier ruling, the Court held that the distinction between filing a lawsuit to harass a competitor and filing an intervention to harass a competitor is not hugely important when the question is whether the purpose of the filing is to use judicial process to effect delay. Because the distinction is not clearly relevant to the prosecution of this case the Court will not reconsider what Fair Grounds styles a "finding." The Court does note, however, that the "Background" section of the August 13, 2001 ruling explicitly notices only three suits as being initiated by Fair Grounds.

Defendants are mistaken to conclude that the Court made any findings of fact on pages 41–43 of the earlier ruling. The Court, at page 41, wrote, "there is *some evidence* Defendants engaged in repetitive litigation." The ruling then proceeded to present the propositions which have some support. It did not couch each proposition in terms of its evidentiary basis, but the paragraph's topic sentence clearly modifies the whole. Similarly, on page 42, the ruling states that "[t]here is also some evidence that Defendants abused the judicial process." Insofar as Fair Grounds seeks confirmation that the ruling did not make findings on these controverted matters, the Court is happy to oblige.

For the foregoing reasons, then, the motion to reconsider is denied on this ground as well.

## CONCLUSION

Accordingly, the motion to reconsider the earlier ruling (doc. 573) is **DENIED.**