| MOAN BERNARD ARMSTRONG, Judge.
This is a wrongful death and survival action. The plaintiffs decedent died of an infection contracted from eating raw oysters. The plaintiff sued, among others, a State agency. The claim against the State was based upon failure to enforce a health regulation. The trial court found in favor of the plaintiff and awarded damages. The State appeals. We will affirm.
Jack Van Natta visited New Orleans in June, 1993. He was from California. He was accompanied by his girlfriend, June Wutzke. They visited three New Orleans restaurants and Mr. Van Natta ate raw oysters. Mr. Van Natta was infected with the bacteria vibrio vulnificus as a result of eating the raw oysters. The bacteria is not dangerous to most people. However, to persons with certain health problems, including chronic liver disease, the bacteria can be deadly. Mr. Van Natta, who was an alcoholic, suffered from liver disease. As a result, he became extremely ill and died from the infection.
| j>Mr. Van Natta’s daughter, Charlene Van Natta Grayson, filed suit against the restaurants and DHH. She settled with the restaurants. The case was tried to the bench and the trial court found DHH 100% at fault. The theory of liability was that DHH had failed to enforce a State Sanitary Code provision calling for restaurants which serve raw oysters to place warnings at the point of sale informing customers that persons with certain health impairments including chronic liver disease, should not eat raw oysters. The provision had been added to the State Sanitary Code because of concern about the threat of the vibrio vulnificus bacteria to persons with certain health impairments including chronic liver disease. However, because the Interstate Shellfish Sanitation Conference (“ISSC”) had certain objections to the language of the warning called for by the State Sanitary Code, DHH deliberately did not enforce the requirement of restaurant warnings.
DHH argues on appeal that its failure to enforce the raw oyster warning requirement did not matter because, as a matter of voluntary compliance, the restaurants had the warnings in place. The plaintiff replies that the evidence at trial showed that the restaurants did not have the warnings in place. The trial court’s holding the DHH liable for failure to enforce the warning requirement necessarily implicitly included a factual finding that the warnings were not in place. Of course, we review the trial court’s finding of fact under the clearly wrong-manifestly erroneous standard of review and so we cannot disturb that factual finding so long as it is reasonable. The evidence in support of plaintiffs position consisted of the testimony of June Wutzke, who did not remember seeing any warnings, and the testimony of Pauline Warriner, who went to the restaurants on behalf of the plaintiff, a few months after Mr. Van Natta’s death, to see if there were warnings in place, and she did not see any warnings in place. Also, Ms. |sWarriner obtained menus from the restaurants and the menus did not contain any warnings. The evidence in favor of the DHH’s position consisted of the testimony of two DHH sanitary inspectors and the testimony of the restaurants’ owners. However, the testimony of one of the inspectors was impeached and the testimony *90 of the other was not clearly in support of DHH positions. The testimony of the two restaurant owners was that they did eventually post the warnings but really, could not recall whether they had done so prior to the time of Mr. Van Natta’s visit. Overall, we cannot say that the trial court’s implicit finding, that the warnings were not posted in the restaurants, was clearly wrong-manifestly erroneous.
R.S. 40.4.A. requires DHH to enforce the State Sanitary Code. DHH argues that it acted legally in “suspending” the enforcement of the regulation requiring the warnings due to objections by the ISSC to the required warnings. DHH cites R.S. 40:5.3.E. for the proposition that DHH was required to conform to the wishes of the ISSC. However, the statutory language relied upon by DHH merely requires that DHH “promulgate and adopt emergency regulations in accordance with R.S.49:953 (B) of the Administrative Procedure Act encompassing the detailed methods and technical procedures prescribed by ISSC in the National Shellfish Sanitation Program Manual of Operations”. Such emergency regulation procedures are not implicated with respect to enforcement of the oyster warning regulation. Thus, the statutory language does not excuse the DHH of the statutory requirement to enforce the State Sanitary Code’s oyster warning regulation.
DHH argues more generally that, because it had the statutory authority to promulgate the oyster warning regulation, and the authority to amend or repeal that regulation, it necessarily has the implied power to “suspend” enforcement of the regulation. We do not agree. The DHH, following lawful rule-making procedures, |4could amend or repeal the regulation. However, so long as the regulation is extant, the DHH has absolutely no choice but to enforce it as written. R.S. 40:4.
DHH also argues that its decision not to enforce the regulation was a policy making or discretionary act immunized from liability by R.S. 9:2798.1. However, while the DHH engaged in policy making or discretionary acts when it promulgated the regulation, its policy making and discretionary acts ended with promulgation of the regulation. Once the regulation is promulgated, DHH has no discretion as to whether to enforce it because enforcement is statutorily mandated. R.S. 40:4. DHH’s course of action is prescribed by statute, in that enforcement of the regulation is statutorily mandated, and DHH has no judgment to exercise or decision to make as to whether to enforce the regulation. Therefore, no policy making or discretionary act is involved and R.S. 9:2798.1 is not applicable. E.g., Simeon v. Doe, 618 So.2d 848 (La.1993).
DHH also argues that its decision not to enforce the oyster warning regulation is protected by legislative immunity. We will not address the applicability of legislative immunity to administrative agencies because, clearly, if it is applicable to administrative agencies, it applies to them in their rule-making role, which is analogous to legislation, and not in their rule-enforcement role, which is clearly executive rather than legislative. While DHH’s promulgation of the regulation was “legislative”, its enforcement of the regulation after promulgation is “executive”.
DHH argues that some comparative fault should have been assigned to Mr. Van Natta. However, there is no evidence that Mr. Van Natta knew or should have known that eating raw oysters was hazardous to him. As discussed above, the trial court implicitly found that the warnings were not posted in the restaurants. | .¿Therefore, there is no possible basis to *91 assign any comparative fault to Mr. Van Natta.
DHH argues that, even if warnings had been posted, Mr. Van Natta would not have needed them. DHH bases this argument on the fact that Mr. Van Natta’s physicians had advised him to quit drinking but he continued to drink. We will not generalize from Mr. Van Natta’s failure to heed warnings against drinking to an assumption that he would fail to heed a warning to avoid eating raw oysters. Mr. Van Natta was an alcoholic, i.e., he was addicted to alcohol, and that explains his failure to quit drinking. Avoiding eating raw oysters would present no difficulty similar to alcoholism.
DHH argues that the trial court should have assigned some comparative fault to non-defendant the California Health Department. DHH also complains of the trial court’s exclusion of some of its evidence as to the comparative fault of the California Health Department. However, even if we consider the excluded (but proffered) evidence, and consider the California Health Department’s alleged comparative fault on a de novo basis, we find no error by the trial court. DHH argues that information as to the danger presented by vibrio vulnificus bacteria to persons with chronic liver disease was transmitted to the California Health Department, but that the California Health Department did not disseminate that information to California physicians, with the result that Mr. Van Natta’s California physicians did not know to warn him to avoid raw oysters. However, while consumption of raw oysters is' quite common in Louisiana, it is doubtless rarer in California and we see no reason to doubt that the California health Department made reasonable decisions as to what information, regarding which of myriad health concerns, to disseminate generally among all California physicians. ^Moreover, and perhaps more importantly, the restaurant oyster warning regulation was promulgated some time after Louisiana physicians had been alerted to the threat of the bacteria and the precise purpose of the regulation was to warn those, such as out-of-state tourists, who did not receive warnings from their physicians. DHH also briefly refers to comparative fault of Mr. Van Natta’s California physicians but for the same reasons as just given with respect to the California Health Department, we see no error in not assigning any comparative fault to Mr. Van Nat-ta’s California physicians.
The plaintiff cross appeals as to the quantum of damages. It is readily apparent to us that, because the amount of medical expenses was stipulated, and not made the subject of any testimony, the trial court simply omitted the medical expenses from the judgment through oversight. Therefore, we amend the judgment to add the medical expenses in the stipulated amount of $84,042.43. We also find that the amount of general damages awarded, $85,000, was within the trial court’s vast discretion. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993).
For the foregoing reasons, the judgment of the trial court is affirmed as amended.
AFFIRMED AS AMENDED.
BAGNERIS, J., dissents with reasons.