Georgenner BATTON, et al.

v.

GEORGIA GULF, et al.

Donald Butler, Jr., et al.

v.

Georgia Gulf, et al.

George Gardner, III, et al.

v.

State of Louisiana through the Department of Health & Hospitals, et al.

Joseph Leonard, et al.

v.

State of Louisiana through the Department of Health & Hospitals, et al.

Jerry Oldham, et al.

v.

State of Louisiana through the Department of Health & Hospitals, et al.

Scott Cavalier, et al.

v.

State of Louisiana through the Department of Health & Hospitals, et al.

Elvin Aucoin, et al.

v.

State of Louisiana through the Department of Health & Hospitals, et al.

Sylvester & Kim Lavigne, et al.

v.

State of Louisiana through the Department of Health & Hospitals, et al.

---

30. *Chlorine Institute,* 613 F.2d at 123.

John Capone, et al.

v.

**State of Louisiana through the Department of Health & Hospitals, et al.**

Civil Actions Nos. 02–353–D–M3, 02–354–D–M3, 02–379–D–M3, 02–565–D–M3, 02–943–D–M3, 02–355–D–M3, 02–381–D–M3, 02–380–D–M3, and 02–976–D–M3.

United States District Court, M.D. Louisiana.

May 6, 2003.

Frank Tomeny, III, Bryan D. Fisher, Tomeny & Fisher, Baton Rouge, LA, Stephen Todd Hoover, Hoover Law Firm, Baton Rouge, LA, for Plaintiffs.

Emile C. Rolfs, III, Luis Arturo Leitzelar, Brent Paul Frederick, Breazeale, Sachse & Wilson, Baton Rouge, LA, F. Barry Marionneaux, F. Charles Marionneaux, Marionneaux & Marionneaux, Plaquemine, LA, Wilson E. Fields, Wilson Fields & Associates, L.L.C., Baton Rouge, Stephen Todd Hoover, Hoover Law Firm, Baton Rouge, LA, Richard J. Dodsonm, Dodson & Hooks, Baton Rouge, LA, for Defendants.

## RULING & ORDER

BRADY, District Judge.

Pending before the court are motions to remand filed on behalf of the plaintiffs in the first five of the above captioned nine consolidated actions.[1] Also pending are two identical motions to reconsider an earlier denial of a motion to remand filed by the plaintiffs in the seventh case captioned above.[2] In the remaining three cases, the plaintiffs have no pending motions.[3] Defendants Georgia Gulf Corporation and Georgia Gulf Chemical & Vinyl, L.L.C. have also submitted a motion requesting that the court deny the motions to remand for the purpose of certifying one dispositive question to the Fifth Circuit Court of Appeals for interlocutory appeal.[4]

The underlying cause of action sounds in tort. The various plaintiffs claim damages from arsenic in the water supply. Of particular importance for these motions is the fact that the plaintiffs all have included claims against the Louisiana Department of Health and Hospitals ("LDHH"), which failed to warn anyone of the arsenic levels despite being under an alleged duty to test the water supply and warn citizens of contamination.[5] The plaintiffs claim that the

1. The pending motions to remand are *Batton* (02–353, Dkt No. 5), *Butler* (02–354, Dkt No. 4), *Gardner* (02–379, Dkt No. 3), *Leonard* (02–565, Dkt No. 4), and *Oldham* (02–943, Dkt No. 8).

2. The pending motions to reconsider are from *Aucoin* (02–381) (*Batton* Dkt Nos 32 & 33). The plaintiffs in *Cavalier* (02–355), *Aucoin* (02–381), and *Lavigne* (02–380) filed motions to remand before their cases were consolidated with the *Batton, Butler, Gardner,* and *Leonard* cases and transferred to this docket. Those motions to remand were denied. *See* Report and Recommendation, *Lavigne* (02–380, Dkt No. 12); Opinion denying Motion to Remand, *Lavigne* (02–380, Dkt No. 14) (adopting the report and recommendation prior to the filing of plaintiffs' objections); and Opinion denying Motion to Remand, *Lavigne* (02–380, Dkt No. 16) (reconsidering the denial after the filing of plaintiffs' objections). In the interim between the two denials, the plaintiffs filed a motion to reconsider. The court did not refer to the motion to reconsider in its second denial, but subsequently dismissed it as moot because the second denial in fact considered the plaintiffs' objections. *Lavigne* (Dkt No. 19). Subsequent to the consolidation order, on July 22 (Dkt No. 33) and 23 (Dkt No. 34), the plaintiffs in *Aucoin* (02–381) filed two motions to reconsider the Opinion denying Motion to Remand in light of the result in *Batton* whenever an opinion issued in that case. Those motions have not been addressed. The *Cavalier* (02–355) and *Lavigne* (02–380) cases do not have pending motions to remand or reconsider.

3. On December 30, 2002, the court ordered *Oldham* (02–943) and *Capone* (02–976) consolidated with the remaining cases. *Capone* (02–976, Dkt No. 20). The *Oldham* plaintiffs filed a motion to remand, *Oldham* (02–943, Dkt No. 8), but the *Capone* plaintiffs have not.

4. *Batton* (02–353, Dkt No. 67).

5. The plaintiffs in the three cases · without pending motions assert the same claims against LDHH as well as against all of the

presence of LDHH as a defendant destroys diversity jurisdiction. They also claim that there is no federal question and that supplemental jurisdiction is not available. As a consequence, they argue, the court has no subject matter jurisdiction and should remand these cases to state court. Besides the state agency, the remaining defendants named in these actions are the Georgia Gulf Corporation, Georgia Gulf Chemicals & Vinyl, L.L.C., Hercules, Inc., ATOFINA Petrochemicals (formerly American Petrofina), Inc., Hercofina, Ashland, Inc. (formerly Ashland Oil, Co.), International Minerals & Chemicals Corporation, Allemania Chemicals Company, Ashland Chemical Co., and the Parish of Iberville.[6]

Defendants brought these matters to this court. All the plaintiffs originally filed their complaints in the 18th Judicial District Court in the Parish of Iberville, Louisiana. Georgia Gulf removed all the cases in which it is a named defendant (all except *Oldham* and *Capone* ) based on diversity of citizenship.[7] The defendants in *Oldham* and *Capone*—at least the ones who responded at all—sought removal on the same basis. Upon receiving the motions to remand in *Batton, Butler, Gardner, Leonard,* and *Oldham,*

the court referred them to the Magistrate Judge assigned to the cases. The parties filed briefs in support of their positions. On March 27, 2003, the Magistrate Judge issued her report and recommendation, which advised that the court dismiss these five lawsuits and remand them to state court because:

(1) There is no federal question upon which to base jurisdiction; and

(2) The presence of LDHH destroys diversity jurisdiction; and

(3) The plaintiffs did not fraudulently join LDHH.

The defendants have filed objections to the Magistrate Judge's report.[8] They seek to have the court either:

(1) Reject the Magistrate Judge's recommendation and deny the motion to remand, or

(2) In the event that the court intends to follow the recommendation, to deny the motions for the purpose of certifying the question of diversity jurisdiction to the Fifth Circuit for interlocutory review.

The report did not specifically address the *Aucoin, Capone, Lavigne* or *Cavalier* cases.

---

other defendants. Thus, the defendants in *Lavigne, Cavalier,* and *Capone* have had the opportunity to present arguments to the court in opposition to the *Batton, Gardner, Butler, Leonard,* and *Oldham* plaintiffs' motions for remand and the *Aucoin* plaintiffs' motion to reconsider.

**6.** Only *Oldham* (02–943) and *Capone* (02–976) name as defendants Hercules, Inc., ATOFINA Petrochemicals, Inc., Hercofina, Ashland, Inc., International Minerals & Chemicals Corporation, Allemania Chemicals Company, Ashland Chemical Co., and the Parish of Iberville. All the other cases limit their claims to LDHH, the Georgia Gulf Corporation, and (in some of the cases) Georgia Gulf Chemicals & Vinyl, L.L.C.

**7.** Plaintiffs claim that Georgia Gulf sought removal based on federal question jurisdiction. Apparently, that was not claimed initially as a basis for jurisdiction. Georgia Gulf has now argued that the court has federal question jurisdiction. Consequently, the court will consider that question as well.

**8.** The court has received three objections— one from Georgia Gulf (on behalf of both the corporation and the limited liability company) (Dkt No. 67), one from Hercules, ATOFINA Petrochemicals, and Ashland Chemical Company (Dkt No. 70), and one from International Minerals and Chemicals Corporation (Dkt No. 73). The other named defendants have not responded.

This court has carefully considered the objections, the record, the law applicable to this action, and the report and recommendation of United States Magistrate Judge Docia Dalby dated March 27, 2003.[9] The court hereby approves the report and recommendation and adopts its reasons. The court will, however, offer some supplementary reasons for this result as it concerns the effect that LDHH's status as a party defendant has on diversity and supplemental jurisdiction. In addition, the court will take up two other matters below. First, the court will discuss its reason for denying Georgia Gulf's motion to certify the diversity jurisdiction question for interlocutory appeal. Second, the court has determined that, for the same reasons discussed herein and in the report and recommendation, it does not have subject matter jurisdiction over *Lavigne, Cavalier, Capone* or *Aucoin.* *Aucoin* has an active motion to reconsider. The court here grants that motion and remands that case. The other three cases have no active motions regarding remand. Consequently, the court raises the issue of subject matter jurisdiction in those cases *sua sponte* and rules that those cases must be remanded as well. The court discusses its reasons for taking both these actions below as well.

### STANDARD OF REVIEW

This court conducts a *de novo* review of the Magistrate Judge's report and recommendation. According to 28 U.S.C. § 636(b), a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Consequently, the court reviews all issues to which the defendants have objected as if freshly presented.

### ANALYSIS

### I. Diversity Jurisdiction

The question the court must consider is whether the presence of the LDHH destroys diversity jurisdiction in this case. Everyone agrees—and it is clearly established in the law—that the LDHH, as a non-independent agency of the state of Louisiana, is not a citizen of any state. So the problem with diversity jurisdiction is not that the plaintiffs are citizens of Louisiana and the LDHH is a citizen of Louisiana. Instead, the problem is that LDHH is not a citizen at all. The question is whether having one defendant with no citizenship destroys diversity jurisdiction. The Magistrate Judge concluded that it does and the court agrees.

The defendants argue that the proper question is whether the LDHH destroys the diversity jurisdiction that would exist if LDHH were not a party. In *Cavalier, Lavigne,* and *Aucoin,* the Magistrate Judge assigned to those cases wrote:

> It is well settled that a state is not a "citizen" for purposes of diversity jurisdiction under § 1332. Thus, the presence of the State of Louisiana as a named defendant does not destroy diversity of citizenship which otherwise exists between the plaintiffs and the remaining defendants.[10]

This argument relies on a suppressed premise, which Georgia Gulf supplies in its brief: Diversity jurisdiction requires that no plaintiff and defendant be citizens of the same state. Only by including that

9. Dkt No. 60.

10. Report and Recommendation, *Lavigne* (02–380), Dkt No. 12 at 2–3 (internal citations omitted).

premise does the conclusion follow. And though the premise will yield the correct answer in any case in which each party is a citizen of some state, it does not do so when a party has no citizenship.

The Magistrate Judge whose report this court here adopts concludes that 28 U.S.C. § 1332 does not allow federal courts to hear diversity cases against entities that are not citizens of any state. That position is clearly supported in the language of the statute and in case law interpreting the statute. Of primary importance is the statutory language itself. Section 1332(a) provides as follows:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—
> (1) citizens of different States;
> (2) citizens of a State and citizens or subjects of a foreign state;
> (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
> (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

Defendants would turn this affirmative requirement—that a suit must be "between citizens of different States"—into a proscription—that a suit in diversity may not be between citizens of the same state. The language of the statute does not support this reading for several reasons. First, the express language of subsection 1332(a)(1) allows only those suits in which plaintiffs and defendants are citizens of different states. If a party is not a citizen

of a state at all, then it is not a citizen of a different state and it would be inappropriate to allow that party to bring a case or be subject to federal jurisdiction based only on diversity of citizenship.[11]

This interpretation is supported by the inclusion of subsections 1332(a)(2)-(4) in the statute. Those sections, set out above, make special allowances for other potential diversity parties that do not have any state citizenship. So, subsection (2) allows diversity suits where one party has citizenship in a foreign state, but not citizenship in a domestic state. Subsection (3) allows diversity jurisdiction where people who have foreign but not domestic state citizenship are added as parties. And subsection (4) allows a foreign state (which for obvious reasons is not a citizen of a state of the United States) to bring suit in federal court against citizens of domestic states. Nowhere is there any provision allowing diversity jurisdiction where a non-citizen state is a party. Clearly, Congress contemplated the situation of non-citizens and specifically allowed for suits by those non-citizens it thought appropriate. The obvious conclusion is that Congress did not intend the states of the United States to be amenable to diversity jurisdiction in the federal courts.

██ The caselaw draws the same conclusion. In *Postal Telegraph Cable Co. v. Alabama,* the Supreme Court held:

> A State is not a citizen ... [Therefore,] a suit between a State and a citizen or corporation of another State is not between citizens of different States [and the federal courts have] no jurisdiction of it, unless it arises under the Constitu-

---

11. This proposition is strongly supported in the case law. *See, e.g., Postal Telegraph Cable Co. v. Alabama,* 155 U.S. 482, 487, 15 S.Ct. 192, 39 L.Ed. 231 (1894); *Texas Dept. of* *Housing and Community Affairs v. Verex Assurance, Inc.,* 68 F.3d 922, 926 (5th Cir.1995); *Long v. District of Columbia,* 820 F.2d 409, 412–14 (D.C.Cir.1987).

tion, laws or treaties of the United States.

The Fifth Circuit recently recognized the validity of this rule. In *Texas Department of Housing and Community Affairs v. Verex Assurance, Inc.*, the Fifth Circuit wrote:

> This action was removed to federal district court on the basis of federal diversity jurisdiction under 28 U.S.C. § 1332. In an action where a state is a party, there can be no federal jurisdiction on the basis of diversity of citizenship because a state is not a citizen for purposes of diversity jurisdiction. Likewise, state agencies that are the alter ego of the state are not citizens for the purposes of diversity jurisdiction.[12]

Thus, it would be incorrect to hold, as the defendants urge, that only a party who shares citizenship with a party "across the '*v.*'" destroys diversity. If a party is not a citizen of any state, there is no diversity of citizenship, except as otherwise provided by the statute. The statute makes no provisions for the states or state agencies as parties in diversity suits.

## II. Supplemental Jurisdiction

 Nor is it appropriate to include the state agency based on supplemental jurisdiction, as the defendants urge. It is ancient doctrine that for diversity jurisdiction to be proper, diversity of citizenship must be complete.[13] Allowing supplemental jurisdiction over non-diverse parties in cases wholly based on diversity would undermine the complete diversity requirement. The District of Columbia Circuit rejected supplemental (then pendent party) jurisdiction in the most factually similar case the court has been able to discover.[14]

In *Long v. District of Columbia*,[15] the Court of Appeals was asked to review verdicts against the District of Columbia and a private electricity firm. The jury found both defendants liable for wrongful death in a diversity action brought in federal district court. The District of Columbia appealed, claiming that it could not be made a party to a diversity suit. The D.C. Circuit agreed, reversing the verdict against the District. The court reasoned that "the use of pendent party jurisdiction in a suit based on diversity to hear a plaintiff's claim against a 'stateless' party would flout Congress's intent" for the claim "would not constitute a 'matter in controversy . . . between . . . citizens of different states.'"[16] This reasoning is compelling and supports remanding this matter to the state court.[17] The court

---

**12.** 68 F.3d at 926. The Fifth Circuit ultimately concluded that the state agency involved in the suit was not an alter ego of the state. Because it found that the agency was independent, it held that diversity jurisdiction was proper. The parties in this case do not argue that the LDHH is an independent agency. Consequently, that aspect of *Texas Department of Housing* is not relevant to the case.

**13.** *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806).

**14.** Cases on this subject are rare in the courts of appeals because those courts do not have jurisdiction to hear appeals from orders granting motions to remand based on lack of jurisdiction. *See* 28 U.S.C. § 1447(d) ("An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise").

**15.** 820 F.2d 409 (D.C.Cir.1987).

**16.** *Id.* at 416.

**17.** It bears noting that the D.C. Circuit refused to reverse the verdict against the electric company in this case, despite the problems with diversity jurisdiction. The court made recourse to Federal Rule of Civil Procedure 21, which allows federal district courts to remedy a jurisdictional defect by dismissing only the non-indispensable non-diverse party. This remedy is not appropriate in the

holds that the presence of the LDHH as a party to this suit destroys diversity jurisdiction and prevents supplemental jurisdiction. Accordingly, the court finds that the case was removed improvidently and without jurisdiction.

## III. Interlocutory Review

■ The defendants have moved the court to deny the plaintiffs' motions for remand for the sole purpose of certifying this matter for interlocutory appeal to the Fifth Circuit Court of Appeals. 28 U.S.C. § 1292(b) allows district courts, in certain circumstances and in their discretion, to certify for appeal orders that are otherwise not appealable. Certification for interlocutory review is warranted where an "order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."[18] Since an order to remand this case cannot be appealed to the Fifth Circuit Court of Appeals,[19] the only means of obtaining a definitive statement from that court is to deny the motions to remand and certify the matter for interlocutory appeal. Should the Fifth Circuit

agree that its input would be helpful, it may, in its discretion, permit the appeal.[20]

Defendants direct the court's attention to a Louisiana federal court that has resorted to certification in a case involving removal jurisdiction. In *Grant v. Chevron Chem. Co.*,[21] the district court for the Eastern District of Louisiana denied a motion to remand and certified a question to the Fifth Circuit in order to resolve a split within that district on the application of the Fifth Circuit's *In re Abbott Laboratories* decision. That court noted that at least twelve decisions, most within the Eastern District, came to conflicting conclusions on the very same issue. The result, barring intervention by the Fifth Circuit or a new consensus within the Eastern District, would have been that defendants seeking removal would be subject to the "luck of the draw." Since justice is worst served by lottery, the district court thought it appropriate to seek guidance from the Court of Appeals.

The defendants also argue that *Martine v. National Tea Co.*[22] supports their request for certification. In that case, the district court entered a remand order pursuant to 28 U.S.C. § 1447(b) because the defendants had failed to remove the case

---

instant case. *Long* presented special facts, as the Court of Appeals noted:

> We choose to exercise this authority given the circumstances of this case. The jurisdictional error that occurred in this suit did not prejudice PEPCO [. . .] Given the absence of such prejudice, we can see no reason to respond to the jurisdictional error by throwing out Long's entire suit and erasing nearly four years of litigation. "Judicial economy, convenience and fairness to litigants" all counsel the opposite course.

*Id.* at 417 (internal citations omitted). This court does not face the same situation. This litigation is in its initial stages. And as defendants argue—in support of federal jurisdiction—the most sensible way to proceed is by consolidating all these actions in the same

court. Recourse to Rule 21 severance is discretionary. *United States v. O'Neil*, 709 F.2d 361, 368 (5th Cir.1983). It seems, then, that the most suitable course of action is to remand this entire litigation to the state court where it initially was brought and where all the claims can be resolved as to all the parties.

18. 28 U.S.C. § 1292(b).

19. 28 U.S.C. § 1447(d).

20. 28 U.S.C. § 1292(b).

21. 2001 WL 839010 (E.D.La.2001), *aff'd* 309 F.3d 864 (5th Cir.2002).

22. 837 F.Supp. 749 (M.D.La.1993).

within one year of its filing. The defendants filed a motion to reconsider because, they argued, their delinquency was brought about by plaintiffs' failure to serve process within a year of filing suit. Allowing the remand to stand would allow plaintiffs to game the system. Because direct review is available of remand orders under § 1447(b) (unlike under § 1447(c), as in this case), the court denied the motion to reconsider and ordered the case remanded. However, since that court's order conflicted with a decision of a district court in Alabama and the issue was of "utmost importance to the administration of justice," the court withheld entering final judgment and certified the dispositive question to the Fifth Circuit.

This court thus faces the question whether the determination it is inclined to make on this issue is sufficiently uncertain as to warrant certification for interlocutory review. Of the three conditions specified for certifying a question to the Court of Appeals, one clearly is fulfilled in this case. At least with respect to the question of subject matter jurisdiction, the impact that a state agency's presence in a suit has on diversity jurisdiction is a controlling issue of law. It is a closer question whether certification will materially advance this litigation. If this court simply remanded these consolidated matters, the litigation could proceed apace. An appeal to the Fifth Circuit would consume months. Section 1292(b) clearly means to allow review of non-final orders that will significantly affect the conduct of on-going litigation in federal court. Certification would be most appropriate were the court inclined to deny the motion because otherwise the matter could go through trial only to be reversed on appeal on jurisdictional grounds. A Fifth Circuit ruling that forecloses that result obviously would be a material advance. In any event, though this situation is not the classical one in

which interlocutory review will materially advance the conduct of the litigation, the court is prepared to assume that for the purposes of the litigation in this court a definitive statement on this issue by the Fifth Circuit would constitute a "material advance."

The nub of the issue is whether there truly is a substantial ground for difference of opinion. Not just any close question should be certified for interlocutory appeal. The law is filled with close cases. Judicial economy counsels against sending every such close call to the courts of appeals, for district courts are quite capable of making those calls. Interlocutory appeals are most warranted when an issue appears to confound the district courts and divide them. So, in *Grant*, the Eastern District found itself truly at sea in applying *Abbott Laboratories*. There were, as the district court pointed out, two very different rules of law regularly at work within the same district.

Broad-based disagreement is not a requirement for certifying interlocutory appeals, of course. In *Martine*, a District Judge in the Middle District of Louisiana found himself disagreeing with only a single judge in a different state. Decidedly more important in that case, however, was the fact that his own decision was questionable on policy grounds. Though the court in *Martine* granted a motion to remand based solely on the defendants' untimely removal, it appeared as if the defendants' procedural default resulted from the plaintiffs' delay tactics—delay tactics that may have been designed specifically to defeat removal. The court applied the express language of the statute to the facts in that case, but had considerable worries that such a literal application of the statute would work fundamental injustice. It was this threat, not the single instance of disagreement, that counseled certification.

This court is faced with neither broad-based disagreement nor substantial doubt with respect to underlying policy considerations. The defendants appeal to only two courts that have resolved this question differently. Both those cases appear to have been erroneously decided. In *United Pacific Ins. Co. v. Capital Dev. Bd. Of Ill*,[23] the District Court for the Northern District of Illinois allowed a suit against a state agency to go forward. That court did not disagree with this court that there is no diversity jurisdiction in such cases. Instead, it allowed the agency to be joined under Rule 19 by the use of pendent party jurisdiction. Hence, the court there essentially accepted the defendants' supplemental jurisdiction argument disposed of above. The court sees absolutely no reason to follow that decision. The *United Pacific* court's only argument in favor of allowing a non-diverse state agency to be joined as a pendent party concerned the economy of doing so. It stated:

> Compelling reasons exist for exercising pendent jurisdiction in the case before us. United's claims against Arrow and [the state agency] involve common questions of law and fact. Joinder of [the agency] would fully serve the considerations of judicial economy, convenience and fairness to the litigants.[24]

While such considerations may be important, this court is not willing to cast jurisdictional requirements aside to accomplish their realization. In this respect, the court follows the District of Columbia Circuit Court of Appeals, which specifically cast doubt on the reasoning in *United Pacific*.[25] In any event, the policy considerations that were of some moment in that case are not present in this one. The most rapid means of ensuring that this entire multi-party controversy is resolved with alacrity and economy is to remand these cases, one and all, to the very court where the plaintiffs originally brought them.

The second case favorable to the defendant's position has even less support. In *Laird v. Chrysler Corporation*,[26] the District Court for the District of Massachusetts allowed one defendant to implead the state of Rhode Island in a lawsuit based on diversity jurisdiction. The court reasoned that "[s]ince Rhode Island is not a citizen for diversity purposes, it cannot be a co-citizen of any party and could not destroy the diversity jurisdiction already established."[27] As this court already has discussed above, this argument relies on a false characterization of the requirements of diversity jurisdiction.

Nor does some policy concern threaten the viability of this court's ruling. In *Martine*, the District Court feared that its ruling, though consistent with the statute, would allow plaintiffs an opening to defeat by trick defendants' right to remove. That unwanted result is not threatened by the ruling in this case. The fear in *Martine* was that the plaintiffs had sought to avoid federal jurisdiction by manipulating the rules of procedure. The defendants in these cases have adequately tested the claim that the LDHH was fraudulently joined. The Magistrate Judge has recommended that the court reject that claim and the court finds that the recommendation is correct. Hence, there is no fear that this rule would allow manipulation. If manipulation were present, then the court

23. 482 F.Supp. 541 (N.D.Ill.1979).

24. *Id.* at 546.

25. *Long v. District of Columbia*, 820 F.2d 409, 416 (D.C.Cir.1987).

26. 92 F.R.D. 473 (D.Mass.1981).

27. *Id.* at 475.

could dismiss the state party and take jurisdiction. But it already has been determined that the plaintiffs, some of whom at least began their suits by naming *only* the LDHH, do have at least facially valid claims against the agency. The district courts retain the ability to inquire into fraudulent misuse of civil procedure. As a result, the court does not see any reason to suspect that the holding with respect to diversity jurisdiction gives rise to an urgent need for a definitive comment by the Fifth Circuit.

Consequently, the court sees no reason to certify this matter to that court. The contrary decisions concerning the proposed issue for appeal are few and not strongly supported. Aside from the prior determination in some of these consolidated cases, the disagreement does not create uncertainty within the district.[28] That order remains open to reconsideration during the life of the case, as does any non-final order that the court does not certify for direct appeal under Federal Rule of Civil Procedure 54(b). Consequently, the court, in the exercise of its judgment and discretion, will deny the motion for certification of appeal under § 1292(b).

## IV. Remaining Grounds for Remand

The court has carefully considered the remaining objections, the record, the law applicable to this action,[29] and the report and recommendation of United States Magistrate Judge dated March 27, 2003.[30] The court hereby approves the report and

**28.** Defendants urge that the court give more effect to the earlier ruling, than simply to use it as a reason for certifying an appeal. Specifically, they seek to have the court advert to the doctrines of collateral estoppel and law of the case. These doctrines they argue, mandate that the court rule the same way in these five now-consolidated cases with pending motions to remand. In this argument they are wrong. The earlier order was not a final judgment, which is required for collateral estoppel to apply. Moreover, this court has continuing jurisdiction over all non-final orders entered in these cases under Federal Rule of Civil Procedure 54(b).

**29.** The court has, among other cases, considered the effect of the Fifth Circuit's recent *Travis v. Irby*, 326 F.3d 644 (5th Cir.2003), decision, which discusses the ebb and flow of the language used to express the standard for finding fraudulent joinder. As the Fifth Circuit recognizes in that case, the minor differences in locution do not create a wide diversity of actual standards. This court is convinced that the Magistrate Judge in this case used the appropriate standard and applied it correctly. According to *Travis*, the appropriate standard is as follows: "After all disputed questions of fact and all ambiguities in the controlling state law are resolved in favor of the nonremoving party, the court determines whether that party has any possibility of recovery against the party whose joinder is questioned." *Id.* at 648 (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir.2002)). The Magistrate Judge's report enunciates the same standard:

> [T]he court must evaluate all factual allegations and ambiguities in the controlling state law in favor of the plaintiff. If there is any possibility the plaintiff has stated a cause of action against LDHH, the federal court must concluded that joinder is proper, thereby defeating diversity and requiring the case to be remanded.

Report and Recommendation, Dkt No. 60 at 15. Defendants object to the fact that in a couple of places the report states that there can be "absolutely no possibility" that plaintiff has stated a claim for them to prevail on the fraudulent joinder issue. While that phrase properly reproduces the standard as it was announced in some Fifth Circuit cases, taken on its own it is misleading. It is clear from the above-quoted passage, however, that the Magistrate Judge in this case properly couched the "possibility" that the plaintiffs may recover on their state law claims against LDHH in terms of the "controlling state law" after resolving all factual allegations and legal ambiguities in the plaintiffs' favor. That is the proper standard as it is more clearly enunciated in the *Travis* decision.

**30.** Dkt No. 60.

recommendation and adopts its reasons in full with respect to the issues of federal question jurisdiction and fraudulent joinder. Accordingly, the motions to remand will be granted.

## V. Consolidated Cases

Four cases that are identical for the purposes of these motions have been consolidated with the five cases whose motions for remand now are under consideration. As discussed above and in the briefs of the defendants, three of those cases have already been taken through the referral and review process on the question of subject matter jurisdiction. The Magistrate Judge then assigned to them recommended that the court rule that the presence of the state agency does not destroy diversity jurisdiction and the court adopted that recommendation. Now these cases have been transferred. One of them, *Aucoin*, has a pending motion to reconsider that earlier ruling. The other three cases have no pending motions. The court must decide how most appropriately to resolve the conflict between the current ruling and the ruling in the remaining four cases. For the reasons provided below, the court will grant the motion to reconsider in *Aucoin*, raise the jurisdictional question *sua sponte* in *Cavalier, Lavigne,* and *Capone,* and remand all these case to the 18th Judicial District Court as well.

### A. *Aucoin's Motion to Reconsider*

■ The plaintiffs in *Aucoin* have asked the court to reconsider the earlier ruling in that case denying their motion to remand.[31] They incorporated in those motions the arguments that were as yet unmade in the motions to remand in *Batton* and consolidated cases and argued that their case should be remanded in the event that the court determines that the other cases must be. The court agrees.

Georgia Gulf has filed an opposition to this motion to remand. It argues that the prior ruling is not a judgment under Federal Rule of Civil Procedure 59(e) and thus is not subject to a motion to reconsider. It also argues that the plaintiffs have not presented sufficient grounds for reconsidering a judgment under Rule 59(e).

These arguments are misguided. The court agrees that the earlier ruling does not have the status of a judgment under Federal Rule of Civil Procedure 54(a). The consequence of that fact, however, is that the court has continuing jurisdiction to alter the ruling under Rule 54(b).[32] The Rule 59(e) time limitations and standard are not applicable to motions to reconsider that appeal to the court's continuing authority under Rule 54(b).[33] The court has the authority to reconsider the holding of the earlier ruling and will do so. For the

---

**31.** *Batton* (02–353, Dkt Nos 32 & 33).

**32.** Fed R. Civ. Pro. 54(b) ("When more than one claim ... or multiple parties are involved, the court may direct the entry of a final judgement as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer

than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties").

**33.** *Livingston Downs Racing Ass'n v. Jefferson Downs Corp.,* 259 F.Supp. 2d 471, 2002 WL 32079254 at *1–*3 (M.D.La.2002) (discussing the relationship between Rule 59(e) motions to alter or amend a judgment and motions to reconsider properly brought subject to the court's authority under Rule 54(b)).

reasons discussed herein and in the Magistrate Judge's report, the motion to reconsider is granted and *Aucoin* is remanded to the 18th Judicial District Court.

## B. Lavigne, Cavalier, and Capone

It is axiomatic that the federal courts must raise jurisdictional questions where they see them to arise, whether the parties do so or not. Nevertheless, the court normally would seek the comment of the parties on this matter before venturing to rule. In these circumstances, however, that course of action does not seem necessary and would only delay the expeditious conduct of this litigation. All of these nine cases present exactly the same legal issues with respect to the jurisdictional question. All of the plaintiff groups brought suit originally in state court. Moreover, all the defendants in the three consolidated cases without pending motions—*Cavalier* (02–355), *Lavigne* (02–380), and *Capone* (02–976)—are defendants in the five cases whose motions now occupy the court's attention. Hence, all the defendants have had a full opportunity to make their arguments against remand and no party will be prejudiced or deprived of the opportunity to present full arguments in favor of their respective positions on the matter.

Accordingly, for the same reasons presented above and in the Magistrate Judge's report and recommendation, it is the judgment of this court that it does not have subject matter jurisdiction to hear *Cavalier*, *Lavigne*, or *Capone* and that they were improperly removed from state court.

## CONCLUSION

Accordingly, for the reasons assigned herein and in the report and recommendation of Magistrate Judge Dalby attached hereto, the motions to remand filed by all plaintiff groups (*Batton*, Dkt No. 5; *Butler*, Dkt No. 4; *Gardner*, Dkt No. 3, *Leonard*, Dkt No. 4; and *Oldham*, Dkt No. 8) are hereby **GRANTED** and those cases are remanded to the 18th Judicial District Court in the Parish of Iberville, Louisiana.

For the same reasons the two motions to reconsider (*Batton*, Dkt Nos 32 & 33) filed by the plaintiffs in *Aucoin* (Civil Action No. 02–381) are hereby **GRANTED** and that case is remanded to the 18th Judicial District Court in the Parish of Iberville, Louisiana.

**IT IS FURTHER ORDERED** that the consolidated cases, *Cavalier* (Civil Action No. 02–355), *Lavigne* (Civil Action No. 02–380), and *Capone* (Civil Action No. 02–976) be and hereby are also remanded to the 18th Judicial District Court in the Parish of Iberville, Louisiana.

**IT IS ALSO ORDERED** that Defendant Georgia Gulf's motion for certification of appeal (Dkt No. 67) is hereby *DENIED*.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

DALBY, United States Magistrate Judge.

The court has before it a number of motions to remand[1] filed in individual actions which have since been consolidated. The underlying litigation in these consolidated actions arises from plaintiffs' alleged exposure to arsenic contaminated drinking water. According to plaintiffs, in 1998, the State, through the Department of Health of Hospitals (LDHH), tested various water wells located at defendant Georgia Gulf's plant in Plaquemine, Louisiana, and found

---

1. The motions to remand currently pending before the magistrate on referral from the district judge, are in *Batton*, 02–353 (rec.doc. 5), *Butler*, 02–354 (rec.doc. 4), *Gardner*, 02–379 (rec.doc. 3), *Leonard*, 02–565 (rec.doc.4), and *Oldham*, 02–943 (rec.doc. 8).

excessive levels of arsenic in the water. LDHH, however, did not warn the plaintiffs or Georgia Gulf of the arsenic levels until some three years later in 2001. Plaintiffs claim that they unwittingly drank the contaminated water during those intervening years, and have as a consequence suffered damages.

Plaintiffs in each of the consolidated cases named the same two defendants—Georgia Gulf and LDHH—with the exception of in the *Oldham* case, where the defendants are several entities alleged to have been responsible for injection of hazardous waste that caused contamination of the water supply, in addition to LDHH and the Parish of Iberville.[2]

Georgia Gulf removed all the cases in which it is a named defendant, alleging jurisdiction under both diversity of citizenship and, according to plaintiffs, federal question based on preemption.[3] Georgia Gulf contends that LDHH should be disregarded as a defendant because it is not a "citizen," and furthermore, it should be disregarded under the principles of fraudulent joinder. In *Oldham*, defendants removed based solely on diversity jurisdiction, alleging the fraudulent joinder of both LDHH and the Parish, neither of which initially joined in the notice of removal. Motions to remand by the plaintiffs followed.

The plaintiffs in the *Batton, Butler, Gardner, and Leonard* remand motions argue the following:

1. Complete diversity does not exist between all plaintiffs and all defendants, and Georgia Gulf's Notice of Removal fails to state the required jurisdictional facts. 28 U.S.C. 1332.

2. The required amount in controversy in not present, and Georgia Gulf's Notice of Removal fails to state that the required amount is in controversy. 28 U.S.C. 1332.

3. Complete preemption does not exist under the Safe Drinking Water Act, and plaintiffs have stated valid state law tort claims. 42 U.S.C. 300j–8(e).

4. Supplemental jurisdiction is not a valid grounds for removal of these cases. 28 U.S.C. 1441; 28 U.S.C. 1367.

In addition to these grounds, plaintiffs in *Batton* and *Butler* have asserted the following additional grounds for remand:

5. This case was removed more than 30 days after Georgia Gulf Corporation received papers from which it may have determined the alleged fraudulent joinder of the State of Louisiana, through the Department of Health and Hospitals. 28 U.S.C. 1446(b).

6. The "other paper" that Georgia Gulf claims made this case removable was not a voluntary act by the plaintiff and, therefore, cannot serve as grounds for removal. 28 U.S.C. 1446(b).

In *Oldham*, the following grounds are urged for remand:

1. Defendants, State of Louisiana, through the Department of Health and Hospitals, and the Parish of Iberville, did not timely consent to this removal. 28 U.S.C. § 1446(c).

---

**2.** According to the defendants' memoranda, the *Oldham* plaintiffs are employees of the Georgia Gulf defendants, and therefore, unlike the plaintiffs in the other consolidated cases, are prohibited from suing the Georgia Gulf defendants in tort, which explains those defendants' absence in the *Oldham* case.

**3.** In the defendants' oppositions to the plaintiffs' motions to remand, the defendants do not pursue any claim of federal question jurisdiction based on preemption. In any event, the argument would be unpersuasive, as discussed herein.

2. Complete diversity does not exist between all plaintiffs and all defendants. 28 U.S.C. § 1441(a).

3. The requisite jurisdictional amount cannot be met by the plaintiffs.

4. Supplemental jurisdiction is not a valid ground for removal of claims.

### *The General Law of Removal*

■ The removing party bears the burden of establishing the existence of federal jurisdiction over a state court suit. *See, e.g., Winters v. Diamond Shamrock Chemical Co.,* 149 F.3d 387, 397 (5th Cir. 1998). Furthermore, it is axiomatic that the lower federal courts are courts of limited jurisdiction and may exercise only the jurisdiction that has been conferred by Congress. *E.g., Trizec Properties, Inc. v. United States Mineral Products Co.,* 974 F.2d 602, 604 (5th Cir.1992). Accordingly, there is a presumption against subject matter jurisdiction that must be rebutted by the party bringing the action to federal court, and there is no time limit for filing a motion to remand on the basis of lack of subject matter jurisdiction. *Coury v. Prot,* 85 F.3d 244, 248 (5th Cir.1996).

■ On the other hand, a motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal. A "procedural defect" is defined as any impropriety in the removal that would not deprive the district court of jurisdiction over the subject matter if the action had been filed as an original action in federal court. In other words, if this court would have had jurisdiction over the action had it been filed originally in federal court, any other irregularities in the removal constitute only procedural defects that are waived if not raised by a party within 30 days of removal. *See, e.g., Albarado v. Southern*

*Pacific Transportation Co.,* 199 F.3d 762, 765–66 (5th Cir.1999); 28 U.S.C. § 1447(c).

The main thrust of the plaintiffs' arguments in these motions centers around the lack of subject matter jurisdiction. Plaintiffs claim that neither diversity nor federal question jurisdiction exists in these consolidated cases. And in *Batton* and *Butler,* the plaintiffs additionally claim that, regardless of the existence of subject matter jurisdiction, the removal was untimely and the motion to remand timely urged; thus remand is required. In *Oldham,* the plaintiffs also seek remand based on a procedural defect, that is, that the consent of both DHH and the Parish was untimely, and therefore the cases must be remanded regardless of the existence of subject matter jurisdiction.

### *Federal Question Jurisdiction*

Since defendants alluded to federal question jurisdiction in their notice of removal and plaintiffs specifically raised the issue, federal question jurisdiction should be addressed first, because if there is jurisdiction on the basis of federal question, then there is no need to look to diversity of citizenship as a grounds for removal.

Plaintiffs did not allege a federal cause of action in their original petitions filed in state court, and it is clear that "the party who brings the suit is master to decide what law he will rely on." *Boone v. DuBose,* 718 F.Supp. 479 (M.D.La.1988), citing *The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913). Defendants, however, appeared to suggest in their notice of removal that the Safe Drinking Water Act, 42 U.S.C. § 300f, et seq. (SDWA) completely preempts state law and provides federal question jurisdiction.

■ To establish complete preemption and support federal question jurisdiction, a party must show (1) the statute contains a

civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law; (2) there is a specific jurisdictional grant to the federal courts for enforcement of the right; and (3) there is a clear Congressional intent that claims brought under the federal law be removable. *Heimann v. National Elevator Industry Pension Fund,* 187 F.3d 493, 500 (5th Cir.1999), citing *Aaron v. National Union Fire Ins. Co. of Pittsburg, Pa.,* 876 F.2d 1157 (5th Cir.1989).

Arguments that similar federal environmental statutes support federal question jurisdiction have been raised in this court and found unpersuasive,[4] and the defendants have provided no definitive authority in support of their position. Indeed, Georgia Gulf writes in its memorandum that its "removal is premised on diversity jurisdiction, not on complete preemption, as plaintiffs suggest."[5] Therefore, this court has no original jurisdiction pursuant to 28 U.S.C. § 1331, and removal based on federal question jurisdiction is unavailable.

### Diversity Jurisdiction

Regardless of timeliness or procedural defects, if the defendants cannot show diversity jurisdiction as the basis of removal, these matters must be remanded. There is no question that plaintiffs and *most* of the defendants are diverse. It is the effect of the state defendant (LDHH) on diversity jurisdiction that is at issue. Does the presence of the State through LDHH destroy complete diversity? And if so, can the State's presence nevertheless be ignored because it was fraudulently joined?[6]

Subject matter jurisdiction in this case is premised on 28 U.S.C. § 1332(a)(1) which reads as follows:

· (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between -

(1) citizens of different States

For nearly 200 years, since the 1806 decision in *Strawbridge v. Curtiss,* 3 Cranch 267, 2 L.Ed. 435 (1806), the general diversity statute has been construed as requiring complete diversity of citizenship. Accordingly, "[a] case falls within the federal district court's 'original' diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, *i.e.,* only if there is no plaintiff and no defendant who are citizens of the same State." *Wisconsin Dept. of Corrections v. Schacht,* 524 U.S. 381, 388, 118 S.Ct. 2047, 2052, 141 L.Ed.2d 364 (1998); *accord Caterpillar, Inc. v. Lewis,* 519 U.S. 61, 68, 117 S.Ct. 467, 472, 136 L.Ed.2d 437 (1996)("The current general-diversity statute ... thus applies only to cases in which the citizenship of each plaintiff is diverse from the citizenship of each defendant.").

Defendants argue that the state is not a "citizen" for purposes of diversity jurisdiction; therefore, it can be ignored. While the first part of the defendants' argument is correct, the conclusion is not. The grant of diversity jurisdiction is only so broad as Congress dictated—it must be between

---

4. See *Boone v. DuBose,* 718 F.Supp. 479 (M.D.La.1988).

5. Georgia Gulf goes on to say that "[t]he sole question to be resolved is whether LDHH is properly considered in the diversity analysis. Georgia Gulf contends that as an arm of the State of Louisiana, LDHH is not a "citizen" for purposes of 28 U.S.C. § 1332. Alternatively, Georgia Gulf contends that LDHH was fraudulently joined because plaintiffs are unable to show the possibility of recovering against LDHH." Rec. doc. no. 16, pp. 2–3.

6. The defendants also raised amount in controversy as an issue, but the court has no need to reach that issue unless it finds first that there is complete diversity of citizenship.

*citizens* of different states.[7] Few Supreme Court or appellate cases discuss the issue at length, probably because, as a general rule, a district court's order remanding a case is not appealable. These higher courts state the principle that a party must be a citizen as a given, or it is implied through other findings, which generally concern the status of a particular party as an arm of the state.[8]

▆ In the instant motions, neither side disputes the status of LDHH as an arm of the state. And neither side disagrees with the statement that a state, in this case the State of Louisiana, is not a "citizen" for purposes of diversity jurisdiction.[9] The application of that principle, however, results not in the State's being ignored, but rather results in the State's presence destroying diversity jurisdiction. *Moor v. County of Alameda*, 411 U.S. 693, 717, 93 S.Ct. 1785, 1796–97, 36 L.Ed.2d 596 (1973); *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 81 F.3d 1412, 1416 (5th Cir.1996). The requirement of 28 U.S.C. § 1332 that the controversy be between citizens of different states is a positive one; that is diversity jurisdiction is a limited grant of jurisdiction to *citizens* who are diverse.

A number of district courts have had occasion to discuss the citizenship require-

---

7. We are here concerned only with that part of section 1332 affecting citizens.

8. See, e.g., in *Moor v. County of Alameda*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), two petitioners, Moor and Rundle, brought damages actions in District Court against several law enforcement officers and Alameda County, alleging federal causes of action. Moor also alleged that the court had diversity jurisdiction. Among, other arguments, the County of Alameda contended that it was not a citizen for purposes of diversity jurisdiction. However, the court found otherwise—that the county was a citizen of California and thus the court had diversity jurisdiction, thus implying that had the County been found to be an arm of the state, it's presence would have destroyed diversity.

In *PYCA Industries, Inc. v. Harrison County Waste Water Management District*, 81 F.3d 1412 (5th Cir.1996), PYCA sued the District, O & W Foote, and Fidelity & Deposit Company of Maryland. The district court held that the District was not the alter ego of the state, and therefore subject to the jurisdiction of the court. The appellate court cited *Moor v. County of Alameda*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973) for the proposition that "It is well-settled that a state is not a "citizen" for purposes of diversity jurisdiction." The appellate court affirmed the district court's ruling that the District was not the alter-ego of the state, and therefore was a "citizen" for purposes of diversity jurisdiction.

In *C.H. Leavell & Company v. Board of Commissioners of the Port of New Orleans* 424 F.2d 764 (5th Cir.1970), the defendants were both the port and the Department of Highways of Louisiana. (The Department of Highways had previously been recognized as an entity separate from the State of Louisiana, and therefore not implicated in the diversity analysis, *C.H. Leavell & Company*, at 767, n. 7, citing *Louisiana Highway Commission v. Farnsworth*, 74 F.2d 910 (5th Cir.1935), and *Department. of Highways of La. v. Morse Bros. & Associates, Inc.*, 211 F.2d 140 (5th Cir. 1954)). The question before the court was whether or not the port was an entity separate from the state so as to sustain diversity jurisdiction. The court found that is was "a sufficiently separate entity from the State of Louisiana to sustain diversity jurisdiction in the case sub judice." Implicit in the courts analysis and ruling is that the presence of the State of Louisiana, through the port, if the port were not a separate entity, would have destroyed diversity jurisdiction.

9. In *Cavilier, Lavigne,* and *Aucoin,* three other individual cases removed here in this series of cases, motions to remand were filed and denied—in part based on the principle that a state is not a "citizen" for purposes of diversity jurisdiction under 28 U.S.C. § 1332—prior to consolidation of all cases. *See* Magistrate Reidlinger's Magistrate Judge's Report in the consolidated case *Lavigne v. State of Louisiana, et al, Civil Action Number 02–380.*

ment where the State is a party.[10] In *State of La. v. Sprint Communications Co.*, 892 F.Supp. 145, 147 (M.D.La.1995), the issue was squarely presented in a motion to remand:

> Each defendant is apparently diverse in citizenship from each of the individual named plaintiffs as required by 28 U.S.C. § 1332 but the presence of the State of Louisiana as a party plaintiff presents a different issue. For a least a century, it has been settled that a state plaintiff is not a citizen of itself for purposes of diversity jurisdiction. *Postal Telegraph Cable Co. v. State of Alabama*, 155 U.S. 482, 15 S.Ct. 192, 39 L.Ed. 231 (1894)("A state is not a citizen. And under the judiciary acts...a suit between a state and a ...corporation of another state is not between citizens of different states, and ...[a district] court of the United States has no jurisdiction of it...") (155 U.S. at 487, 15 S.Ct. at 194). The Congress has provided in 28 U.S.C. § 1332 that federal district courts have diversity jurisdiction only where there is complete diversity of citizenship between all plaintiffs and all defendants and the requisite jurisdictional amount in dispute is met. The presence of Louisiana as a party plaintiff bars removal of this action on the basis of diversity of citizenship because the state is not a citizen of itself.

In *Johns v. Texas Workforce Com'n*, 114 F.Supp.2d 590 (S.D.Tex.2000), the plaintiff, a citizen of Texas, sued his employer and the Texas Workforce Commission. His employer removed on the basis of diversity of citizenship. The plaintiff moved to remand. The court stated "On the face of Plaintiff's Complaint, complete diversity would not appear to exist because of the presence of Defendant Texas Workforce Commission." *Johns*, at 591. In a footnote, the court further explained:

> The parties have not discussed the citizenship status of the Commission. If the Commission is an arm of the state it has no place of citizenship and diversity jurisdiction cannot be established. *See Postal Telegraph Cable Co. v. State of Alabama*, 155 U.S. 482, 487, 15 S.Ct. 192, 194, 39 L.Ed. 231 (1894) ("A state is not a citizen...[and] a suit between a state and a citizen...of another state is not between citizens of different states..."). Alternatively, the Texas Workforce Commission might be treated as an entity independent of the state, which would make it a Texas citizen. *See Tradigrain, Inc. v. Mississippi State Port Authority*, 701 F.2d 1131, 1132 (5th Cir.1983). The Court does not decide this issue, but notes that in either event diversity would be destroyed.
>
> *Id.*

In *State ex rel Guste v. Fedders Corp.*, 524 F.Supp. 552, 556 (M.D.La.1981), the court stated as follows:

> The plaintiffs contend that diversity does not exist because the State of Louisiana is a party to this lawsuit. Plaintiffs further contend that since a state is not a citizen of any state, a suit between a state and a citizen or corporation of another state is not an action "between citizens of different states," and thus the federal court has no diversity jurisdiction. (Citations omitted). If the state is a real party in interest in this lawsuit, then no diversity exists and the case must be remanded back to the Nineteenth Judicial District Court for the Parish of East Baton Rouge.

In *Missouri Pac. R. Co. v. Travelers Ins. Co.*, 281 F.Supp. 100, 102 (E.D.La.

---

10. Since remands are generally not subject to appeal, most of the jurisprudence directly examining the issue in the context of removal is found in the district courts.

1968), the plaintiff sued the Greater Baton Rouge Port Commission and Travelers Insurance Company in federal court alleging federal question and diversity jurisdiction. The court denied federal question jurisdiction and examined diversity, stating that the question was whether the Port was a "citizen" of the State of Louisiana, as "It cannot be gainsaid that a suit between a state and a citizen of another state is not, for jurisdictional purposes, a suit between citizens of different states under 28 U.S.C.A. § 1332. *Postal Telegraph Cable Company v. State of Alabama,* 155 U.S. 482, 15 S.Ct. 192, 39 L.Ed. 231; *Arctic Maid Fisheries, Inc. v. Territory of Alaska,* 297 F.2d 28 (9th Cir.1961); *Broadwater–Missouri Water Users' Ass'n v. Montana Power Co.,* 139 F.2d 998 (9th Cir. 1944)."

In *Helms v. Ehe,* 279 F.Supp. 132 (S.D.Tex.1968), a Texas citizen sued a New York defendant for personal injuries sustained in a car wreck in state court in Texas. The Texas Highway Department intervened as the self-insured employer of the plaintiff. The defendant removed to federal court based on diversity jurisdiction. The plaintiff and intervenor moved to remand on the basis that the presence of the Texas Highway Department was the presence of the state, which would destroy diversity. The court stated "It is well settled that if a state is a real party at interest in a suit, there can be no removal on the basis of diversity jurisdiction. This is because a state cannot be a 'citizen of a state' as required by 28 U.S.C. § 1441." *Helms,* at 133, citing *Stone v. State of South Carolina,* 117 U.S. 430, 6 S.Ct. 799, 29 L.Ed. 962 (1886); See later cases collected in 1A Moore's Federal Practice 525, N.24 (Rev.Ed.1961).

The defendants, however, cite *Wisconsin Department of Corrections v. Schacht,* 524 U.S. 381, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998) in support of their position. There the court held that the presence of a claim barred by the Eleventh Amendment in an *otherwise removable* civil rights suit did not destroy removal jurisdiction. In *Schacht,* unlike in the instant matter, jurisdiction was based on federal question, and the case was "otherwise removable." The instant cases, to the contrary, are not "otherwise removable" due to the presence of the State, who is not a "citizen" of itself or of any other state. *Schacht* discussed counsel's attempt to analogize the effect of the presence of a non-diverse party diversity jurisdiction with the effect of the presence of the State claiming sovereign immunity where jurisdiction is based on the existence of a federal question.

...the argument looks to removal based upon "diversity jurisdiction," 28 U.S.C. § 1332, for analogical authority that leads to its conclusion, namely, that this "jurisdictional" problem is so serious that the presence of even one Eleventh–Amendment–barred claim destroys removal jurisdiction with respect to *all* claims (*i.e.,* the entire "case"). (Citations omitted). A case falls within the federal district court's "original" diversity "jurisdiction" only if diversity of citizenship among the parties in complete., *i.e.,* only if there is no plaintiff and no defendant who are citizens of the same State. See *Carden v. Arkoma Associates,* 494 U.S. 185, 187, 110 S.Ct. 1015, 1016–1017, 108 L.Ed.2d 157 (1990); *Strawbridge v. Curtiss,* 3 Cranch 267, 2 L.Ed. 435 (1806). But cf. Fed. Rule Civ. Proc. 21; *Newman–Green v. Alfonzo–Larrain,* 490 U.S. 826, 832–838, 109 S.Ct. 2218, 2222–26, 104 L.Ed.2d 893 (1989)(Rule 21 authorizes courts to dismiss nondiverse defendants in order to cure jurisdictional defects, instead of the entire case). Consequently, this Court has indicated that a defendant cannot remove a case that contains some claims

against "diverse" defendants as long as there is one claim brought against a "nondiverse" defendant. See *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68–69, 117 S.Ct. 467, 472–473, 136 L.Ed.2d 437 (1996)...We find the analogy unconvincing. This case differs significantly from a diversity case with respect to a federal district court's *original* jurisdiction. The presence of the nondiverse party automatically destroys original jurisdiction: No party need assert the defect. No party can waive the defect or consent to jurisdiction. (Citations omitted). No court can ignore the defect; rather a court, noticing the defect, must raise the matter on its own. (Citations omitted)...Where original jurisdiction rests upon Congress' statutory grant of "diversity jurisdiction," this Court has held that one claim against one nondiverse defendant destroys that original jurisdiction. See, *e.g., Newman–Green, Inc., supra,* at 829, 109 S.Ct. at 2221 ("When a plaintiff sues more than one defendant in a diversity action, the plaintiff must meet the requirements of the diversity statute for each defendant or face dismissal.")

*Schacht*, at 388, 118 S.Ct. 2047.

■■■ In short, "[i]n an action where a state is a party, there can be no federal jurisdiction on the basis of diversity of citizenship because a state is not a citizen for purposes of diversity jurisdiction." *Texas Dept. of Housing and Community Affairs v. Verex Assur., Inc.*, 68 F.3d 922, 926 (5th Cir.1995).

The presence of the State of Louisiana, through the Department of Health and Hospitals, does not support diversity jurisdiction in these cases. Therefore, unless

the State has been, as asserted by defendants in all the removed cases, fraudulently joined so that its presence may be ignored, all of the pending cases must be remanded for lack of subject matter jurisdiction.

### Fraudulent Joinder

■■■ The defendants argue that the State was fraudulently joined in this litigation on the following grounds: 1) The plaintiffs' cause of action relies upon the Safe Drinking Water Act, and the SDWA does not provide plaintiffs with a right of action; 2) plaintiffs cannot establish that LDHH had a duty to warn them, that the scope of any such duty includes their private cause of action, or that the breach of any such duty could be considered the legal cause of their alleged damages; and, 3) that even if plaintiffs could establish liability pursuant to Louisiana's duty/risk analysis, LDHH would still be immune from liability pursuant to La. R.S. 9:2798.1.[11]

■■■ To successfully prove that a LDHH has been fraudulently joined, the removing party must demonstrate that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against LDHH in state court. *Sid Richardson Carbon & Gasoline Co. v. Interenergy Resources, Ltd.*, 99 F.3d 746, 751 (5th Cir.1996). *See also, Hornsby v. AlliedSignal, Inc.*, 961 F.Supp. 923 (M.D.La. 1997); *Kimball v. Modern Woodmen of America*, 939 F.Supp. 479 (M.D.La.1996). In reviewing a claim of fraudulent joinder, the court must evaluate all factual allegations and ambiguities in the controlling state law in favor of the plaintiff. *Id.* If there is any possibility the plaintiff has

---

11. La. R.S. 9:2798.1(B) provides that "liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exer-

cise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties."

stated a cause of action against LDHH, the federal court must conclude that joinder is proper, thereby defeating diversity and requiring the case to be remanded. *Id.*

■ Claims of fraudulent joinder should be resolved by a summary judgment-like procedure whenever possible. *Id.* However, although the district court may pierce the pleadings to examine affidavits and other evidentiary material, it should not conduct a full evidentiary hearing on questions of fact, but rather should make a summary determination by resolving all disputed facts in favor of the plaintiff. *Id.* The removing party thus bears a heavy burden of demonstrating fraudulent joinder. *See, e.g., Sid Richardson Carbon & Gasoline Co.* at 751–52; *Carriere v. Sears, Roebuck and Co.*, 893 F.2d 98, 100 (5th Cir.1990).

*Safe Drinking Water Act*

■ The defendants argue that any claims the plaintiffs' might have must arise solely from the Safe Drinking Water Act, 42 U.S.C. § 300f, *et seq* ("SDWA"), as enforced by the Louisiana State Sanitary Code, Chapter XII (LSSC)[12]. They continue, however, that "because the SDWA cannot be used as a source of duty for private causes of action, see *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n.*, 453 U.S. 1, 17–18, 101 S.Ct. 2615, 2625, 69 L.Ed.2d 435 (1981), plaintiffs' claims against LDHH are not cognizable."[13] Defendants further contend that the State had no duty to test for or to report the arsenic in the Georgia Gulf water, except through the SDWA, and that for the court to impose a legal duty upon LDHH based on the knowledge of the test results would "completely circumvent the intent of Congress on this issue."[14] And finally, they point out that the SDWA does not provide a private right of action for the recovery of compensatory damages.

The SDWA, however, like the Clean Water Act and many other environmental statutes, has a savings clause that provides "nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any requirement prescribed by or under this subchapter or to seek any other relief."[15] For example, in *Mattoon v. City of Pittsfield*, 980 F.2d 1 (1st Cir.1992), plaintiffs contacted "beaver fever" from alleged improperly chlorinated water in their drinking supply. They brought suit in federal court alleging violations of the SDWA, and for damages based on violations of 42 U.S.C. § 1983 and federal common law nuisance claims, along with pendant state law claims for damages. The court held that the federal claims were all preempted by the SDWA, but dismissed the state law

12. The current version of Chapter 12 of the LSSC, now codified in Louisiana Administrative Code, Title 51, Part XII, will be filed in the record for easy reference.

13. See *Defendants' Response Memorandum in Opposition to Plaintiffs' Remand Motions* (rec. doc. 23), p. 14.

14. Defendants' Memorandum in Opposition to Plaintiff's Motion to Remand (rec.doc. 16), p. 13.

15. 42 U.S.C. 300j–8 (e); similar savings clauses in the Clean Water Act and Clean Air Act have been held to preserve state law claims *International Paper Co. v. Ouellette*, 479 U.S. 481, 497, 107 S.Ct. 805, 814, 93 L.Ed.2d 883 (1987) (Clean Water Act); see also *City of Milwaukee v. Illinois and Michigan*, 451 U.S. 304, 329, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981), discussing citizen suit provisions in various environmental statutes (FN 21), and the court's interpretation of same as meaning "only that the provision of such suit does not revoke other remedies."

claims for damages without prejudice to be refiled in state court. The defendants nevertheless are correct that the SDWA does not permit a private right of action for the recovery of compensatory damages, but that provision does not completely destroy plaintiffs' claims in this action. Congress has preserved in the SDWA and many other comparable environmental statutes "the rights of the states to legislate in these areas and right of individuals to pursue state remedies." *Boone v. DuBose,* 718 F.Supp. 479, 484 (M.D.La.1988). Any direct or indirect references by the plaintiffs to the SDWA, are, as stated by Judge Polozola in *Grimes v. Placid Refining Co.,* 753 F.Supp. 622, 624 (M.D.La. 1990), "only to show that defendants breached their duty of care and are, therefore, liable under *state law.* The resolution of the alleged violations of federal law is not necessarily dispositive of this case. The defendants may be liable under state law even if they did not violate the federal regulations." [16]

As plaintiffs pointed out in their motions, a simple reading of the plaintiffs' petitions reveals that the plaintiffs' claims are not based on the SDWA, but rather on state tort law. While the SDWA may or may not have set a minimum acceptable arsenic level for drinking water standards applicable to the water in question, the duties alleged to have been breached arise out of State law and not the SDWA.

In summary, to the extent the defendants' contend that the impact of the SDWA on plaintiffs' claims serves to shield LDHH from liability such that there is no possibility of recovery against LDHH under state law, the court finds the argument to be without merit.

*Policymaking or discretionary acts or omissions immunity under Louisiana Revised Statute 9:2798.1*

Regardless of the application of state tort law, however, La. R.S. 9:2798.1 insulates the State from liability for the performance, or lack thereof, of its discretionary or policy making acts.[17] *Hardy v. Bowie,* 744 So.2d 606 (La.1999). The defendants argue that even were the plaintiffs to establish that LDHH owed a duty to the plaintiffs, there is no possibility of recovery due to the State's discretionary immunity; thus the State was fraudulently joined.

The discretionary immunity analysis is as follows:

...[W]here liability is based on a public entity's non-discretionary acts [as opposed to discretionary, or policy making acts], liability will be judged under the traditional duty-risk analysis... A Court must first consider whether the government employee had an element of choice...[T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an em-

---

**16.** Citing *Boone v. DuBose,* 718 F.Supp. 479, 484 (M.D.La.1988).

**17.** La. R.S. 9:2798.1 reads in pertinent part as follows:

\* \* \* \* \* \*

B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when

such acts are within the scope of their lawful powers and duties.

C. The provisions of Subsection B of this Section are not applicable:
(1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or
(2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.

ployee to follow. In this event, the employee has no rightful option but to adhere to the directive...If the employee had no discretion or choice as to appropriate conduct, there is no immunity. When discretion is involved, the court must then determine whether that discretion is the kind which is shielded by the exception, that is one grounded in social, economic or political policy. If the action is not based on public policy, the government is liable for any negligence, because the exception insulates the government from liability only if the challenged action involves the permissible exercise of a policy judgment. (Citations omitted). *Hardy,* at 606 (La.1999).

■ Under the *Hardy* analysis, if there is a specifically prescribed course of action for LDHH, discretionary immunity is not available. The lack of a prescribed duty, however, does not insulate LDHH from liability. If there is no specifically prescribed course of action applicable to the State, the defendants then must introduce evidence showing that any discretion exercised by LDHH in its alleged failure to test, report, or warn the plaintiffs of the arsenic in the water supply was grounded in social, economic, or political policy in order to be protected from liability by the discretionary immunity statute.[18]

Defendants claim there was no prescribed duty, and for purposes of these motions only, the court will assume that the defendants are correct. The defendants next move to their immunity defense, and they attached the Affidavit of Sidney Becnel, an employee of LDHH, in support of their claim of discretionary immunity:

It is the policy of the Louisiana Department of Health and Hospitals, as reflected in the Louisiana State Sanitary Code, to take enforcement action against public water systems with respect to arsenic standard only when such systems are not in compliance with the state-enforceable drinking water standards as reflected in the regulations contained in the Louisiana State Sanitary Code.[19]

The defendants argue that there were no arsenic drinking water standards applicable to the Georgia Gulf water system (because it was a "non-community" well) through the Louisiana State Sanitary Code until 2002; thus LDHH had no duty to warn of elevated levels of arsenic prior to that time. Accepting this statement as true for the purposes of this analysis, it is uncontested that the results of the water testing performed in 1998 showing elevated levels of arsenic in the water system were reported to Georgia Gulf at least as early as 2001. If such reporting is included in the term "enforceable action," LDHH violated its own policy by reporting the arsenic levels prior to 2002. If "enforcement action" means something else, then it is irrelevant to the plaintiffs' complaints of not being warned of harmful levels of arsenic in the water they were drinking. Therefore, if this portion of the affidavit was submitted as evidence of a policy-driven decision not to report, it is unconvincing. The statement, standing alone, is insufficient to prove that the deci-

---

**18.** "When a failure to warn is a negligent omission not involving policy considerations, it is not protected by the [immunity] exception." See dissent in *Simeon v. Doe,* 618 So.2d 848, 856 (La.1993), citing *Andrulonis v. U.S.,* 924 F.2d 1210 (2d Cir.1991), vacated and remanded, 502 U.S. 801, 112 S.Ct. 39,

116 L.Ed.2d 18; reinstated, 952 F.2d 652 (2d Cir.1991); cert. den. 505 U.S. 1204, 112 S.Ct. 2992, 120 L.Ed.2d 869 (1992).

**19.** See Exhibit A to Memorandum in Opposition to Plaintiffs' Motion to Remand (rec.doc. 16).

sion to test the water systems for arsenic levels, then to keep secret the information gleaned from those tests for several years (taking the plaintiffs' version as true for purposes of the analysis) was a permissible exercise of a policy judgment.

The defendant has not met its burden of showing that any discretion exercised by LDHH was based on social, economic or political policy.[20] Thus, the defendants have not met their burden of proving that the State enjoys discretionary immunity from liability.[21]

*Louisiana duty/risk analysis*

Without the benefit of discretionary immunity or the complete preemption of all state claims by the Safe Drinking Water Act, the potential liability of the State must be assessed under the duty/risk analysis.[22] Under the duty/risk analysis, the plaintiff must establish that the conduct in question was a cause-in-fact of the resulting harm, that the defendant owed a duty of care to the plaintiff, that the duty was breached by the defendant, and that the risk of harm was within the scope of protection afforded by the duty breached. *Hardy,* at 612, citing *Berry v. State Through Dept. of Health and Human Resources,* 637 So.2d 412 (La.1994). Whether a duty is owed is a question of law. *Id.* The inquiry is whether the plaintiff has any law—statutory, jurisprudential, or

arising from general principle of fault—to support his claim. *Id.; Faucheaux v. Terrebonne Consol. Government,* 615 So.2d 289, 292 (La.1993). "A legal duty may be imposed on a political entity 'by legislation or by a rule of law.'" *Verdun v. State through Dept. of Health and Human Resources,* 598 So.2d 1091 (La.App. 4 Cir. 1992), citing *Fowler v. Roberts,* 556 So.2d 1 (La.1989).

The plaintiffs urge both legislative duty through the Louisiana Constitution, Revised Statutes, and the Louisiana State Sanitary Code, and legal duty under Louisiana Civil Code articles 2315 and 2316.[23]

The defendants respond that LDHH had no statutory duty to warn the plaintiffs of arsenic contamination, and that at the time of the testing there was no maximum contaminant level under the SDWA or the LSSC for arsenic applicable to the Georgia Gulf water system. Without necessarily agreeing or disagreeing with either of the defendants' arguments, the court notes that the existence of a specifically mandated course of action is determinative only to the discretionary immunity analysis. More specifically, while the finding of a specifically mandated course of action negates discretionary immunity, the absence of a specifically mandated course of action does not eliminate a finding either of liability under a duty/risk

---

20. See *Williams v. City of Monroe,* 658 So.2d 820 (La.App. 2 Cir.1995) denying summary judgment on grounds that whether a public duty was policy making for purposes of immunity is a question of fact.

21. The government has the burden of proving the immunity exception applies as the exception is in derogation of the Louisiana Constitution's waiver of sovereign immunity. *Simeon v. Doe,* 618 So.2d 848 (La.1993), dissent, citing *Prescott v. U.S.,* 973 F.2d 696 (9th Cir.1992) and *Erickson v. U.S.,* 976 F.2d 1299 (9th Cir.1992).

22. *Hardy v. Bowie,* 744 So.2d 606 (La.1999).

23. The plaintiffs assert statutory authority found in the Louisiana Constitution, Art. IX, Sec. 1 (1974); LSA R.S. 36:251, et seq.;LSA-R.S. 40:1, 40:4, 40:4.11,40:5(2), 40:5(3), 40:5(5), 40:5(6), 40:5(7), 40:5(17), 40:5(19), 40:5(20), 40:5.6—4.9; LSA R.S. 40:1141, et seq.; and LAC Title 51, Part XII (formerly Chapter XII of the Louisiana State Sanitary Code, now codified in the Louisiana Administrative Code).

analysis or of discretionary immunity.[24] In short, the absence of a statutory mandate is not determinative of the plaintiffs ability to recover against the State.

The plaintiffs assert claims against LDHH based on negligence pursuant to articles 2315 and 2316 of the Louisiana Civil Code, by specifically alleging the following:

a. Failure to properly inspect, monitor, repair and/or replace the drinking water to insure it was being operated safely and in compliance with the laws and regulations;

b. Failure to properly report sample test results of elevated levels of arsenic in well water to the plaintiffs and the class members;

c. Failure to warn the plaintiffs and the class members of the hazardous condition of the potable water at the plant;

d. Failure to conduct follow-up testing of the hazardous water;

e. Failure to protect the plaintiffs and the class members against disease from water supplied for consumption and use;

f. Failure to remediate the hazardous condition

Plaintiffs particularly focus on LDHH's duty to warn. This is an area in which several Louisiana state courts have imposed a duty on LDHH to warn the public of health dangers. In *Winstead v. Ed's Live Catfish & Seafood, Inc.*, 554 So.2d 1237 (La.App. 1 Cir.1989), LDHH was sued by a person who ate raw oysters and became ill due the presence of vibrio vulnificus, a naturally occurring bacteria found in seawater. Although people who eat oysters or other uncooked seafood or drink seawater are subject to ingesting vibrio vulnificus, most people will not become ill after doing so. However, individuals with weakened immune systems are more susceptible to infection from vibrio, and once the bacteria enters the bloodstream, the mortality rate is 50% to 70%. In *Winstead*, the court found that the LDHH knew about vibrio and the risks it posed in 1983. The LDHH notified physicians and other health officials of the risks, but it did not warn the public. Although the court ultimately found no liability on the part of LDHH, it did so after finding the existence of a duty: "Since the LDHH had undertaken various studies of this bacteria, and since it knew that there was a danger posed by this bacteria to some small segment of the population, the LDHH certainly had a duty, once it had sufficient information, to issue some type of warning." *Winstead*, at 1244 (La.App. 1 Cir.1989).

*Simeon v. Doe*, 618 So.2d 848 (La.1993), is another vibrio vulnificus oyster death case. The event in that case, like *Winstead*, occurred prior to promulgation by LDHH of language mandating that sellers or servers of raw oysters give warnings of the dangers of eating raw oysters in the Louisiana State Sanitary Code.[25] The court found that LDHH's decision to warn only

24. As explained under the discretionary immunity discussion, the court is unable at this juncture to determine whether any discretion involved was based on social, economic, or political policy.

25. In 1991, DHH amended Chapter IX, § 9:045 of the State Sanitary Code to read: "All establishments that sell or serve raw oysters must display signs, menu warnings, table tents, or other clearly visible warnings at point of sale with the following words":

'WARNING: CONSUMPTION OF *RAW* OYSTERS CAN CAUSE SERIOUS ILLNESS IN PERSONS WITH LEVER, STOMACH, BLOOD, OR IMMUNE SYSTEM DISORDERS. FOR MORE INFORMATION, READ THE INFORMATIONAL BROCHURE OR CONSULT YOUR PHYSICIAN.'
"The warning must also be place on containers of pre-packaged raw oysters and sacks or other container of unshucked raw oysters."

physicians and not the general public of the danger to have been a discretionary act under La. R.S. 9:2798.1(B), which shielded LDHH from liability. Implicit in the finding is that the LDHH, aware of the danger, had a duty to warn, even in the absence of mandatory language requiring so; however, their decision to warn physicians and not the public was a discretionary act of policy.

In *Verdun v. State through the Department of Health and Human Resources*, 598 So.2d 1091 (La.App. 4 Cir.1992), the plaintiff contracted vibrio cholera non–01 induced septicemia when he stepped into Lake Pontchartrain at a boat launch. The plaintiff had an ulcer on his leg that made him susceptible to infection. The plaintiffs sued DHHR for failing to monitor and warn of vibrio cholera in the water at the boat launch. The court found that although the Louisiana Sanitary Code authorized, but did not require, DHHR to take action to prevent infectious diseases like vibrio cholera non–01 induced septicemia, "reason dictates that since the DHHR is charged with promoting public health, it has a 'duty' to exercise its authority and take action in a reasonably prudent and responsible manner." *Verdun*, at 1098. Ultimately, the court found DHHR not liable, but only after full development of the facts:

> Based on the evidence, vibrio cholera non–01 does not pose a significant health risk, especially to a person who only has momentary contact with the water. The evidence does not indicate that the Lake posed any danger other than those normally associated with all warm, brackish salt water. The likelihood that Mr. Verdun would contract a vibrio cholera non–01 induced wound infection through an open ulcer while stepping into Lake Pontchartrain for 30 seconds is far too remote to be considered an unreasonable risk of harm. Therefore, under these facts, vibrio cholera non–01 does not present an unreasonable risk of harm and the State had no duty to monitor the Lake and warn the public of any health hazard. There is no evidence that any defendant assumed such a duty.

In two other recent cases, the court found LDHH liable for negligently enforcing LSCC provisions, and not protected by discretionary immunity.[26] Indeed, even in the cases before this court, the state court has found that the claims against LDHH are viable.[27]

Under the analysis required to examine a claim of fraudulent joinder, the court is not called upon to decide at this point whether or not the plaintiffs will prevail, but rather only whether there exists at least a possibility that the plaintiffs may be able to recover against the State on their claims. Defendants have not met their

---

26. See *Gregor v. Argenot Great Central Ins. Co.*, 817 So.2d 152 (La.App. 4 Cir.2002), writs granted by *Gregor v. Argenot Cent. Ins. Co.*, 819 So.2d 336 (La.2002); and *Grayson v. State ex rel. Dept. of Health and Hospitals*, 837 So.2d 87 (La.App. 4 Cir.2002).

27. The state court district judge in the *Oldham* case, prior to removal, denied the State's no cause of action and summary judgment. In the Memorandum of Louisiana DHH in Opposition to Remand and in Support of Finding of "Fraudulent Joinder" docketed in *Oldham*, 02–943 (rec.doc. 10), DHH has stated that that matter is on writs at the state appellate court. Also, in Plaintiffs' Supplemental Memorandum in Support of Motion to Remand (rec.doc. 46), the plaintiffs have cited a case, *Noretta Thomas v. A. Wilbert & Sons, L.L.C., et al,* (Docket number 55,127—B, 18th Judicial District Court) wherein plaintiffs state that the Louisiana First Circuit Court of Appeal denied writs on a denial by the trial court of DHH's peremptory exceptions arguing that DHH had no duty to disclose to plaintiffs the present of dangerous contaminants in water that the plaintiffs drank and used.

burden of demonstrating that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against LDHH in state court. The defendants therefore have not met their burden of establishing the fraudulent joinder of the State.

In conclusion, since the presence of the State through LDHH as a party destroys diversity jurisdiction, and its presence cannot be ignored under the principles of fraudulent joinder, the court recommends remand of these five cases to the state court. The court does not reach the other grounds for remand urged by the plaintiffs in light of the court's recommendation on the issue of subject matter jurisdiction.

### Recommendation

For the foregoing reasons, the Magistrate Judge recommends that the following motions to remand be **GRANTED** and that these matters be **REMANDED**, pursuant to 28 U.S.C. § 1447(c), to the Eighteenth Judicial District Court for the Parish of Iberville, State of Louisiana, for lack of jurisdiction over the subject matter:

(A) *Georgenner Batton, et al v. Georgia Gulf, et al,* Civil Action No. 02–353–D–M3 (rec.doc. 5);

(2) *Donald Ray Butler, Jr., et al v. Georgia Gulf, et al,* Civil Action No. 02–354–D–M3 (rec.doc. 4);

(3) *George Gardner, III, et al v. State of Louisiana, et al,* Civil Action No. 02–379–D–M3 (rec.doc. 3);

(4) *Joseph Leonard, et al v. State of Louisiana, et al,* Civil Action No. 02–565–D–M3 (rec.doc. 4); and

(5) *Jerry Oldham, et al v. The State of Louisiana, et al,* Civil Action No. 02–943–D–M3 (rec.doc. 8)

March 27, 2003.